DAMOORGIAN, J.
 

 James F. Miller, Jerry Miller, as Trustee of the James F. Miller Irrevocable Trust, Ken Bastani, and Centennial Bank appeal a final judgment in proceedings supplementary.
 
 [1]
 
 We reverse the portion of the final judgment in which the trial court terminated the trust’s spendthrift provision and allowed Gary Kresser to reach undistributed trust assets.
 

 In April 2004, Elizabeth Miller established the James F. Miller Irrevocable Trust (“the James Trust”) for the benefit of her son, James. She named her other son, Jerry, sole trustee. The James Trust is a discretionary trust under which Jerry has absolute discretion to make distributions for James and James’s qualified spouse.
 

 The James Trust contains a spendthrift provision
 
 [2]
 
 and a provision under Article V(B) which gives Jerry, as trustee, the complete discretion to terminate the trust by distributing the entire principal to the beneficiary for any reason.
 
 [3]
 

 
 *174
 
 After forming the James Trust, Elizabeth transferred to the trust a one-third interest in a residence located in Islamora-da, Florida. She transferred another one-third interest in that property to the Jerry E. Miller Irrevocable Trust, and retained the final one-third interest. At that time, the property had a value in excess of one million dollars.
 

 On June 21, 2007, Gary Kresser obtained a judgment against James Miller and Castles Construction and Development, LLC, for $1,019,095.82. The judgment arose out of Kresser’s involvement in a business deal with James and Castles.
 

 Before creating the James Trust, Elizabeth had established her own testamentary trust (“the Elizabeth Trust”), whereby she provided for dispositions upon her death to James and Jerry. A few days after the trial court entered the final judgment in favor of Kresser, Elizabeth amended the Elizabeth Trust to eliminate all dispositions to James, individually, replacing them with dispositions directly to the James Trust. Elizabeth died on September 10, 2007.
 

 When Kresser was unable to collect on his judgment from James or Castles, he brought proceedings supplementary against them and impleaded Jerry, as trustee of the James Trust. Kresser asserted that he was entitled to execute on the James Trust’s assets, including its one-third interest in the Islamorada property, because James exercised dominion and control over all of the trust assets and over Jerry, as trustee. Kresser also recorded a lis pendens in Monroe County, Florida on the Islamorada property.
 

 While the proceedings supplementary were ongoing, Ken Bastani purchased the Islamorada property. Centennial Bank provided the mortgage financing for which it received a mortgage from Bastani which encumbered the Islamorada property. The James Trust received one-third of the sale proceeds.
 

 The trial court conducted a non-jury trial in the proceedings supplementary, at which the relevant issue was whether the spendthrift provision in the James Trust could be invalidated or pierced and the trust’s assets executed upon by Kresser, as judgment creditor. In a written final judgment, the trial court found that the spendthrift provision in the James Trust was valid at the time the trust was settled, and that Elizabeth transferred several assets to the James Trust, including the one-third interest in the Islamorada property.
 

 The trial court then set forth a detailed account of James’s significant control over the James Trust and over Jerry, as trustee. The court found that Jerry had almost completely turned over management of the trust’s day-to-day operations to James. James controlled all important decisions concerning the trust assets, including investment decisions. Jerry never independently investigated these decisions to determine whether they were in the best interest of the trust, and some of the decisions have turned out to be unwise. The trial court concluded that Jerry simply rubber-stamped James’s decisions and “serve[d] as the legal veneer to disguise [James’s] exclusive dominion and control of the Trust assets.”
 

 Ultimately, the court held that James’s exclusive dominion and control over the James Trust served to terminate the trust’s spendthrift provision, allowing Kresser to reach all of the trust’s assets to
 
 *175
 
 satisfy his judgment. The court further concluded that Jerry, by giving James control over the trust and complete access to the trust’s assets, effectively turned over to James all of the trust’s assets pursuant to Article V(B) of the trust, thereby subjecting the assets to execution.
 

 After dealing with the other trust assets, the court ruled that the conveyance of the Islamorada property to Ken Bastani was subject to the outcome of the proceedings supplementary because of the lis pendens. Accordingly, the court directed the clerk to issue a writ of execution to the Sheriff of Monroe County for the execution, levy and sale of the trust’s one-third interest in the property.
 

 The first issue on appeal is whether a court can invalidate a spendthrift provision in a discretionary trust where the beneficiary has no express control over the trust, and thereby allow the beneficiary’s creditors to reach trust assets before they are distributed. The second issue is whether a merger occurred such that the James Trust terminated by law or through Article V(B) of the trust. These issues are purely legal and are subject to de novo review by this court.
 
 See City of Hollywood v. Petrosino,
 
 864 So.2d 1175, 1177 (Fla. 4th DCA 2004).
 

 Florida law recognizes the validity of spendthrift trusts.
 
 See Waterbury v. Munn,
 
 159 Fla. 754, 32 So.2d 603, 605 (1947). A spendthrift trust is a trust “created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection.”
 
 Croom v. Ocala Plumbing & Elec. Co.,
 
 62 Fla. 460, 57 So. 243, 244 (1911). When a trust includes a valid spendthrift provision, a beneficiary may not transfer his interest in the trust and a creditor or assignee of the beneficiary may not reach any interest or distribution from the trust until the beneficiary receives the interest or distribution. § 736.0502(3), Fla. Stat. (2009). However, when a trust requires mandatory distributions to a beneficiary, a creditor or assignee of the beneficiary may reach those distributions if the trustee has not made them within a reasonable time after the designated distribution date. § 736.0506(2), Fla. Stat. (2009).
 

 Courts have invalidated spendthrift provisions where a trust provides a beneficiary with express control to demand distributions from the trust or terminate the trust and acquire trust assets.
 
 See Croom,
 
 57 So. at 244-45;
 
 see, e.g., Dollinger v. Bottom (In re Bottom),
 
 176 B.R. 950, 952 (Bankr.N.D.Fla.1994);
 
 First Fla. Nat’l Bank, N.A. v. Smith (In re Smith),
 
 129 B.R. 262, 264-65 (M.D.Fla.1991);
 
 Putney v. May (In re
 
 May), 83 B.R. 812, 814-15 (Bankr.M.D.Fla.1988);
 
 In re Gillett,
 
 46 B.R. 642, 644-45 (Bankr.S.D.Fla.1985);
 
 Nixon v. P.J. Pedone & Co. (In re Nichols),
 
 42 B.R. 772, 776 (Bankr.M.D.Fla.1984). In these cases, the beneficiary’s express control over the trust determines the extent to which the spendthrift provision is invalid. If the trust allows the beneficiary to control all of the trust assets by terminating the trust or demanding distribution of the entire trust corpus, a court will allow the beneficiary’s creditor to reach the entire trust corpus.
 
 See, e.g., In re Smith,
 
 129 B.R. at 264-65;
 
 In re Gillett,
 
 46 B.R. at 644-45;
 
 Croom,
 
 57 So. at 244-45. Likewise, if the trust allows for the beneficiary to demand a distribution of only a portion of the trust property, the courts have allowed a creditor to attach that portion over which the beneficiary has express control.
 
 See, e.g., In re May,
 
 83 B.R. at 814;
 
 In re Monahan,
 
 68 B.R. 997, 1000 (Bankr.S.D.Fla.1987).
 

 The James Trust does not give James any express control over distribu
 
 *176
 
 tions of the assets. Jerry, as trustee, has sole discretion to distribute income or principal to James, or to terminate the trust under Article V(B). Nevertheless, the trial court concluded that James’s exercise of significant control over the trust invalidated the spendthrift provision, allowing James’s creditors to reach the entire trust corpus. While we agree that the facts in this case are perhaps the most egregious example of a trustee abdicating his responsibilities to manage and distribute trust property, the law requires that the focus must be on the terms of the trust and not the actions of the trustee or beneficiary. In this case, the trust terms granted Jerry, not James, the sole and exclusive authority to make distributions to James. The trust did not give James any authority whatsoever to manage or distribute trust property.
 

 When a trust document provides the trustee with complete discretion over distributions, a creditor may only reach those distributions the trustee chooses to make. § 736.0504(2), Fla. Stat. (2009). The creditor may not compel a distribution from the trustee or attach any interest in the trust before the trustee makes a distribution.
 
 Id.
 
 This applies whether or not the trustee has abused his discretion in managing the trust. § 736.0504(1), Fla. Stat. (2009). There is no law in Florida suggesting that a beneficiary’s creditors may reach trust assets in a discretionary trust simply because the trustee allows the beneficiary to exercise significant control over the trust. It is only when a beneficiary has received distributions from the trust, or has the
 
 express right
 
 to receive distributions from the trust, that the creditor may reach those distributions.
 

 In this case, James may ask Jerry for as many distributions as he wants, and Jerry may choose to fulfill all of those requests. However, because Jerry has sole discretion to make distributions, he may also choose to deny James’s requests at any time, and James would have no recourse against him unless he were abusing his discretion as trustee. Until Jerry makes a distribution to James, Kresser and other creditors may not satisfy James’s debts through trust assets. Accordingly, the trial court erred in invalidating the James Trust’s spendthrift provision and allowing Kresser to reach trust assets before they have been distributed to James.
 

 To conclude otherwise would ignore the realities of the relationship between a beneficiary and trustee of a discretionary trust — the beneficiary always pining for distributions which he feels are rightfully his, and the trustee striving to allow only those distributions that coincide with the settlor’s express intent, as set forth in the trust documents. It is the settlor’s prerogative to choose the trustee she believes will best fulfill the conditions of the trust. In the case before us, it is not the role of the courts to evaluate how well the trustee is performing his duties. We are instead limited, by statute, to evaluating the express language of the trust to determine the extent of the beneficiary’s control and the extent to which a creditor may reach trust assets. It is the legislature’s function to carve out any exceptions to the protections afforded by discretionary and spendthrift trusts.
 

 As an additional ground for allowing Kresser to reach trust assets, the trial court concluded that Jerry had effectively turned over all of the James Trust’s assets to James, triggering Article V(B) of the trust. Article V(B) allows Jerry to terminate the trust by distributing the entire principal to James. The court held that there had been a merger of the trustee and beneficiary by virtue of James’s control over the trust. The court clarified, however, that it was not terminating the trust altogether.
 

 
 *177
 
 “In order to sustain a trust entity, there must be a separation between the legal and equitable interests of the trust.”
 
 Contella v. Contella,
 
 559 So.2d 1217, 1218 (Fla. 5th DCA 1990) (citing
 
 Axtell v. Coons,
 
 82 Fla. 158, 89 So. 419, 420 (1921)). When no separation exists, legal and equitable interests merge and the trust may be terminated.
 
 Id.
 
 However, “merger applies
 
 only
 
 when the legal and equitable interests are held by one person and are coextensive and
 
 commensurate
 
 — i
 
 e.,
 
 the legal estate and the equitable estate are the same.”
 
 Id.
 
 at 1219.
 

 Upon the establishment of the James Trust, Jerry held legal title and James held equitable title.
 
 See Hansen v. Bothe,
 
 10 So.3d 213, 216 (Fla. 2d DCA 2009) (“Upon the establishment of a trust, the legal title is held by the trustee, but equitable title rests with the beneficiary.”). For the merger doctrine or Article V(B) to apply, Jerry would have to convey legal title of the trust principal to James. This conveyance never occurred. Moreover, the trial court did not terminate the trust, as would be required with a merger or under Article V(B). Thus, to the extent that the trial court relied on these mechanisms to allow Kresser to reach trust assets, it erred.
 

 We therefore reverse the final judgment in proceedings supplementary to the extent that it invalidates the James Trust’s spendthrift provision and allows Kresser to reach trust assets before they are distributed to James. In so doing, we also quash the writ of execution on the Islamo-rada property.
 

 Reversed.
 

 HAZOURI and MAY, JJ., concur.
 

 [1]
 

 . We sua sponte consolidate cases 4D09-759 and 4D09-760 for purposes of this opinion.
 

 [2]
 

 . Article X, the trust’s spendthrift provision, states the following:
 

 The right of any person to receive any amount, whether of income or principal, pursuant to any of the provisions of this agreement, shall not, in any manner, be anticipated, alienated, assigned or encumbered, and shall not be subject to any legal process or bankruptcy or insolvency proceeding or to interference or control by creditors or others.
 

 [3]
 

 .Article V(B) of the trust, entitled "Discretionary Payments by Independent Trustee,” states the following:
 

 In granting the trustee discretion over the payment of the income and principal of the trusts under this agreement, it is the settlor’s intention that the independent trustee ... (2) shall have complete discretion to terminate any trust by distributing the entire principal to the beneficiary or beneficiaries eligible to receive distributions from such trust (and if more than one, in equal or unequal shares and to the exclusion of any one or more of them) without further accountability to anyone if the independent trustee determines that
 
 *174
 
 continuation of such trust is inadvisable in view of the size of the trust or for any other reason.