SLEET, Judge.
Bruce Berlinger, the former husband, appeals an order of the trial court granting Roberta Casselberry’s, the former wife, motion for contempt and motion for a continuing writ of garnishment over any disbursements made from the Berlinger Discretionary Trusts[1] to or for the benefit of Berlinger (the garnishment order). Ber-linger argues that the order violates the provisions of sections 736.0503(3) and 736.050.4, Florida Statutes (2011). We affirm the portion of the order granting contempt without further discussion. Because the court had the ability to enter an order granting writs of garnishment against the discretionary trusts, we affirm.
I. BACKGROUND
“Oh what a tangled web we weave when we first practice to deceive.”[2] Although financially able to pay, Berlinger and his attorneys went to extraordinary lengths to avoid his support obligation to Casselber-ry.
After thirty years of marriage, Berlinger and Casselberry divorced in 2007. Pursuant to a marital settlement agreement ratified by the court and incorporated into the final judgment of dissolution, Berlinger agreed to pay Casselberry $16,000 a month in permanent alimony. Thereafter, Berlinger and his current wife enjoyed a substantial lifestyle sustained through payments made to Berlinger directly or on his behalf by the Berlinger Discretionary Trusts. The trusts paid for all of his living expenses including, but not limited to, mortgage payments, property taxes, insurance, utilities, food, groceries, and miscellaneous living expenses. Although he continued to live on the substantial proceeds of the Berlinger Discretionary Trusts, Ber-linger voluntarily stopped paying alimony in May 2011.
When Berlinger stopped paying alimony, Casselberry filed a motion to enforce and for contempt and set it for hearing in August 2011. Just prior to the hearing, the parties reached a settlement wherein Berlinger agreed to satisfy his alimony arrears by liquidating an IRA account. An agreed order was entered August 25, 2011. After the IRA liquidation, $32,625.54 plus interest remained owing on the arrears judgment. The court issued writs of garnishment to SunTrust as trustee to the Berlinger Discretionary Trusts.
Unbeknownst to Casselberry, Berlinger executed deeds on July 21, 2011, conveying his two-third interest in his real property, including his residence (the Banyon Property), into a never-before-disclosed trust, the Schweiker-Berlinger Irrevocable Life Insurance Trust. Michael Presley, Ber-linger’s attorney, enlisted the assistance of his longtime friend, attorney Richard In-glis,[3] to prepare the deeds and set up the new trust.
*963 Berlinger reported his two-third interest in the Banyon Property to be worth $1,386,000; the deed reflected that he was the sole holder of the beneficial interest in the new trust. Berlinger never amended or supplemented his financial disclosures to reveal the real property transfer or the existence of the Schweiker-Berlinger Irrevocable Life Insurance Trust. To the contrary, Berlinger gave a deposition eight days after he executed the deeds and set up the new trust and swore that there were no life insurance trusts and that he was no longer the trustee for any of the family trusts. However, Casselberry’s discovery efforts revealed this new trust, that attorney Presley was named as trustee, and that Berlinger was trustee until October 11, 2011.
Around September 2011, Berlinger was provided a Visa card from SunTrust Bank (the then corporate co-trustee of the Ber-linger Discretionary Trusts) to use for paying expenses not directly paid by the trusts. The trusts paid the Visa credit card bills, including expenses for travel, entertainment, clothing, medical expenses, grooming, gifts, and Berlinger’s current wife’s credit card bills.
In January 2012, Casselberry filed a second motion for civil contempt and enforcement against Berlinger. On January 17, 2012, the trial court issued writs of garnishment against SunTrust. Neither Ber-linger nor SunTrust objected to these writs.
On April 26, 2012, Casselberry filed a motion for continuing writ of garnishment against SunTrust seeking to attach the present and future distributions made to or for the benefit of Berlinger from any trust. Casselberry alleged that traditional methods of enforcing alimony were insufficient. Attorney Presley filed a response in opposition to garnishment on behalf of SunTrust. The trial court set a hearing on that motion for November 6, 2012.
While the garnishment and family law matters were proceeding, the probate court removed SunTrust and substituted attorney Inglis as the new corporate trustee. SunTrust transferred all of the Ber-linger Discretionary Trusts’ funds and assets to Inglis’s designated custodian, Rochdale, a securities firm. Thereafter, attorney Presley filed a motion on behalf of SunTrust Bank and Inglis seeking to substitute Inglis for SunTrust as a party to the ongoing family law case.
On November 5, 2012, one day before the hearing on Casselberry’s motion for continuing writs of garnishment, Inglis withdrew his motion for substitution and filed an action seeking a declaration that the family trusts at issue were discretionary trusts.
During the November 6, 2012, hearing, Inglis testified that for the past year, the trustees, including Inglis, had not made any payments directly to Berlinger. Instead, the trustees made payments on behalf of Berlinger directly to his creditors and utilities. He asserted that the trusts were discretionary and opined that the applicable trust statute, section 736.0504, prohibited any creditor, including Cassel-berry, from attaching any distributions paid on behalf or for the benefit of Ber-linger.
Additional evidence adduced at the hearing revealed that Berlinger and his current wife continued to live on the Banyon Property and that the mortgage loan for the property remained in Berlinger’s name. *964 Neither Berlinger nor his wife were employed and neither of them intended to look for work. All of their expenses were paid by the trusts. To avoid making distributions directly to Berlinger, the Ber-linger Discretionary Trusts, by and through Inglis, directly paid for Berlinger and his current wife’s health insurance and household expenses, including: the mortgage, property taxes, homeowner’s insurance, electricity, water, garbage, sewer, telephone, internet, lawn care, pool care, and pest control.
Evidence regarding the Visa credit card given to Berlinger in September 2011 was admitted. The credit card bills all went to the trustee who paid them from the trust assets. Berlinger also took cash advances on the card to pay their maid, provide cash to his current wife, and to pay her personal expenses.
On November 27, 2012, the trial court entered orders granting Casselberry’s motion for continuing writs of garnishment and the motion for substitution, which substituted Inglis as the garnishee as to the continuing writs of garnishment. The order on the continuing writs provided that all distributions made directly or indirectly to, on behalf of, or for the benefit of Ber-linger by the trustees of all the Berlinger Discretionary Trusts to which Berlinger was a beneficiary would be made payable to Casselberry unless, at the time of any future distributions, there was no alimony or alimony arrears owed. Further, the order provided that if the trustee wished to make distributions to Berlinger beyond the amount of the then outstanding amount of alimony, the trustee must seek court approval before doing so to ensure that there remained sufficient assets in the trust to secure the continued payment of alimony.
Berlinger and Inglis pursued separate appeals. See Inglis, slip op. at 1, — So.3d at -.
II. ANALYSIS
A. Discretionary Trusts
Berlinger argues that section 736.0504 specifically prohibits Casselberry from attaching distributions made to or for Berlinger because the trusts are discretionary trusts[4] and are afforded greater protection from creditors under the Florida Trust Code. We disagree. We conclude that the Florida Supreme Court’s decision in Bacardi v. White, 463 So.2d 218 (Fla.1985), is controlling. See also §§ 736.0503, 736.0504.
Because resolving this issue involves statutory interpretation, we review the trial court’s order de novo. Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 194 (Fla.2007).
The facts of this case are very similar to the facts in Bacardi, 463 So.2d 218. The parties in Bacardi entered into a marital settlement agreement during the divorce process in which the former husband agreed to pay the former wife $2000 per month in alimony. Id. at 220. Soon after entry of the final judgment, he stopped paying alimony. Id. The former wife obtained two judgments for unpaid alimony and a judgment for attorney’s fees. Id. She then served a writ of garnishment on the trustee of the trust and later obtained a continuing writ of garnishment against the trust income for future alimony payments as they became due. Id.
The trustee and the former husband appealed the garnishment order, asserting that the trust could not be garnished for the collection of alimony because it contained a spendthrift provision. Id. at 221. *965 The Florida Supreme Court concluded that, in support cases, the restraint of spendthrift trusts should not be an absolute bar to the enforcement of alimony orders. Id. at 222. The court further held that garnishment as an enforcement alternative should be allowed only as a “last resort” and that when traditional remedies available to the spouse seeking to enforce support orders are not effective, “it would be unjust and inequitable to allow the debtor to enjoy the benefits of wealth without being subject to the responsibility to support those whom he has a legal obligation to support.” Id. The court limited the right of garnishment to disbursements that are due to be made or which are actually made from the trust. Id. The court specifically addressed whether a discretionary disbursement is subject to a writ of garnishment and concluded that “[i]f disbursements are wholly within the trustee’s discretion, the court may not order the trustee to make such disbursements. However, if the trustee exercises its discretion and makes a disbursement, that disbursement may be subject to the writ of garnishment.” Id.
Like Bacardi, the trusts in this case include spendthrift provisions. As such, the provisions are not a bar to the enforcement of the alimony orders or judgment in this case. Id. The trial court’s order granting Casselberry’s motion for continuing writs of garnishment specifically finds that traditional enforcement remedies are not effective and imposes the writs as a last resort. In accordance with Bacardi, the trial court’s order granting Casselber-ry’s motion for continuing writs of garnishment against the Berlinger Discretionary Trusts was proper.
B. Sections 736.0503 and 736.0504
In 2006, the Florida legislature enacted the Florida Trust Code. Sections 736.0503 and 736.0504 of the code are especially relevant to this case. Section 736.0503, which pertains to spendthrift provisions, provides:
(2) To the extent provided in subsection
(3), a spendthrift provision is unenforceable against:
(a) A beneficiary’s child, spouse, or former spouse who has a judgment or court order against the beneficiary for support or maintenance.
[[Image here]]
(3) Except as otherwise provided in this subsection and in s. 736.0504, a claimant against which a spendthrift provision may not be enforced may obtain from a court, or pursuant to the Uniform Interstate Family Support Act, an order attaching present or future distributions to or for the benefit of the beneficiary. The court may limit the award to such relief as is appropriate under the circumstances. Notwithstanding this subsection, the remedies provided in this subsection apply to a claim by a beneficiary’s ... former spouse, ... only as a last resort upon an initial showing that traditional methods of enforcing the claim are insufficient.
According to subsections (2) and (3), a spendthrift provision is unenforceable against a beneficiary’s former spouse who has a judgment or court order against the beneficiary for support or maintenance and permits the former spouse to obtain a court order attaching present or future distributions to or for the benefit of the beneficiary. Thus, the spendthrift provisions included in Berlinger’s trusts are unenforceable as to Casselberry because she has an order against him for support.
A former spouse’s remedies under 736.0503(3) are subject to the exceptions and provisions found in 736.0504. According to section 736.0504(2), a former spouse *966 may not compel a distribution that is subject to the trustee’s discretion or attach or otherwise reach the interest, if any, which the beneficiary may have. The section does not expressly prohibit a former spouse from obtaining a writ of garnishment against discretionary disbursements made by a trustee exercising its discretion. As a result, it makes no difference that the instant trusts are discretionary. Cassel-berry is not seeking an order compelling a distribution that is subject to the trustee’s discretion or attaching the beneficiary’s interest. Instead, she obtained an order granting writs of garnishment against discretionary disbursements made by a trustee exercising its discretion.
Sections 736.0503 and 736.0504 codify the Florida Supreme Court’s holding in Bacardi Neither section protects a discretionary trust from garnishment by a former spouse with a valid order of support. The order in this case complied with the Bacardi decision and sections 736.0503 and 763.0504 of the Florida Trust Code.
C. Public Policy
Florida has a public policy favoring spendthrift provisions in trusts and protecting a beneficiary’s trust income; however it gives way to Florida’s strong public policy favoring enforcement of alimony and support orders. See Gilbert v. Gilbert, 447 So.2d 299, 302 (Fla. 2d DCA 1984) (“In light of our strong public policy toward requiring persons to support their dependents, we hold that spendthrift trusts can be garnished for the collection of arrearag-es in alimony.”); see also Bacardi, 463 So.2d at 222 (“We have weighed the competing public policies and, although we reaffirm the validity of spendthrift trusts, we conclude that in these types of cases the restraint of spendthrift trusts should not be an absolute bar to the enforcement of alimony orders or judgments.”).
III. CONCLUSION
Accordingly, we affirm the trial court’s order granting the former wife’s motion for continuing writs of garnishment.
Affirmed.
CASANUEVA and MORRIS, JJ., Concur.

. (1) The Rosa B. Schweiker Trust; (2) the Frederick W. Berlinger Trust; (3) the Rose S. Berlinger Trust; and (4) the Schweiker-Ber-linger Irrevocable Life Insurance Trust.

. Sir Walter Scott, Marmion, in The Complete Poetical Works of Scott 88, 145 (Horace E. Scudder ed. 1900).

. Attorney Inglis’s involvement in these proceedings is further detailed in the companion *963 case, Inglis v. Casselberry, No. 2D12-6463, - So.3d -, 2013 WL 6212021 (Fla. 2d DCA Nov. 27, 2013).

. The parties concede that the trusts are discretionary.