RICHARD C. COMINS *vs.* THISBE G. COMINS.

No. 91-P-26.

Essex. January 9, 1992. - July 23, 1992.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Divorce and Separation*, Division of property.

In a proceeding for divorce based on the irretrievable breakdown of the parties' forty-eight year marriage, there was neither plain error nor abuse of discretion in the judge's including in the marital estate, subject to division under G. L. c. 208, § 34, the wife's interest in a trust which had been settled and funded by her father and which the wife had "a present, enforceable, equitable right to use . . . for [her] benefit," in view of the length of the marriage and in view of the judge's implicit findings as to the husband's contributions and the parties' mutual reliance on the trust fund. [30-33]

In making a division of marital property under G. L. c. 208, c. 34, the judge in a divorce proceeding appropriately considered his findings, which were not plainly wrong, concerning the wife's allegations of abusive conduct by the husband. [33-34]

In the circumstances of a divorce proceeding, it was appropriate for the judge, pursuant to G. L. c. 208, § 34, to allocate the wife's interest in the marital home to the husband. [34-35]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on June 1, 1988.

The case was heard by *Thaddeus Buczko*, J.

*Roberta F. Benjamin* for Thisbe G. Comins.

*Denise L. Page* for Richard C. Comins.

GREENBERG, J. A judge of the Probate and Family Court granted Richard C. Comins (husband) and Thisbe G. Comins (wife) a divorce based on the irretrievable breakdown of their forty-eight year marriage.[1] The wife appeals

---

[1]The husband filed a complaint for divorce on June 1, 1988, under G. L. c. 208, § 1B. The wife filed an answer and counterclaim on July 14, 1988, and alleged, in addition to an irretrievable breakdown of the marriage,

from the property settlement provisions of the judgment ordering her to transfer her interest in the marital home[2] and to pay $200,000 from her personal estate to the husband. We affirm.

Based on the judge's findings, the property assignment left the husband with net assets of $755,322.04 (approximately forty-four percent of the marital estate) and the wife with net assets of $964,374.30 (approximately fifty-six percent).[3] Both approach the halcyon period of life — the husband is seventy-six years old, the wife seventy-five, and they were in good health at the time of the trial. They have no minor children or other dependents. From their testimony the judge found that the husband would be able to meet his needs through his investment income, and that the wife, although employed, would likewise be able to meet her retirement needs through investment income. He concluded that the parties enjoyed a mutually satisfying relationship for many years and both contributed to the acquisition and preservation of the marital assets — including the home. He also found that the bonds of matrimony began to break down in the 1960's when, at times, their differences escalated "to the point of physical violence by the husband and hysteria by the wife." Ultimately, in 1985, the wife left the marital home and moved to a condominium which she owns outright (assessed at $115,000). The judge rested his decision to divide the assets unequally on one of the discretionary G. L. c. 208, § 34, factors, the contribution of the parties. Since gifts from the wife's family were largely responsible for permitting the

---

cruel and abusive treatment. A judgment of divorce nisi, under G. L. c 208, § 1B, entered on August 24, 1990.

[2]The judge accepted an independent assessment which valued the property at $325,000. The parties held the property as joint tenants.

[3]This figure takes into consideration assets as well as liabilities. Prior to the division and excluding the marital home, the husband had net assets of $230,322.04 and the wife had net assets of $1,164,374.30. The husband's weekly income was $640.67 and the wife's was $1,377.31, $672.42 of which was derived from salary. Although the wife will presumably soon retire, the judge reasoned that, even after the property division, she has a greater opportunity than the husband, by virtue of her greater capital asset base, to supplement her fixed and investment income.

couple to enjoy a high standard of living during their marriage and to acquire the capital assets which they possessed at the time of the divorce, the judge reasoned that the wife was entitled to a greater share of the marital estate.

The wife's major objection is that the judge improperly included in the marital estate her interest in a trust, which was settled and funded in 1963 by her father. The wife and her sister are cobeneficiaries of this trust,[4] and the judge found that the wife's interest had a fair market value of $469,769 at the time of the divorce.[5] While some States exclude a spouse's assets received through gift, bequest, devise, or descent from the property subject to distribution at divorce, Massachusetts is not one of those jurisdictions. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 374 n.13 (1985). See also *Earle* v. *Earle*, 13 Mass. App. Ct. 1062, 1063 (1982) (inheritances). "Whether the [wife's] interest in the trust property is part of [her] estate for purposes of § 34 is a question of law that we are in as good a position as the probate judge to answer." *Lauricella* v. *Lauricella*, 409 Mass. 211, 213 & n.2 (1991). The trust instrument provides that the trustee should "in its discretion pay to [the wife] so much or all of the income and principal of [the trust] as in its discretion it deems advisable to provide for the *comfort, welfare, support, travel and happiness* of [the wife]. . ." (emphasis added).[6] A party's " 'estate' by defini-

---

[4]The trust instrument provides that all property received will be divided into two equal funds, one for each daughter. Each fund is to be held as a separate trust. The trustee is directed to maintain accounts which indicate the respective interests of each daughter's trust. The wife has the power to appoint recipients of the trust corpus upon her death. In the event she chooses not to exercise this power, the remainder is to be distributed to heirs by right of representation. The trust res mainly consists of stocks, bonds, and other securities, and the Bank of Boston now serves as trustee.

[5]We accept the judge's finding regarding the trust's value, although we note that its value is not completely clear from the independent documents submitted in the record appendix.

[6]The record appendix contains two copies of the trust instrument. We have quoted from the second copy, which the index correctly identifies as, "Trust—Vito Grieco Dated August 29, 1963." The index apparently incorrectly identifies a first copy of this trust instrument as "Trust—Vito Grieco Dated January 6, 1981." This first copy as appearing in the appen-

tion includes all property to which [she] holds title, however acquired." *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). See also *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 368-375. As in *Lauricella, supra* at 216, the wife "has a present, enforceable, equitable right to use the trust property for [her] benefit." The judge rightly took into account the trust in the property to be equitably divided. The wife makes similar arguments regarding her other capital assets, which were acquired by investing her own salary and the other gifts from her parents during the course of the parties' marriage. Our conclusion regarding those assets is the same.

Closely linked to this argument is the wife's complaint that the judge's findings lacked sufficient specificity regarding the respective contributions of the parties to justify the asset division set forth in the judgment. Again she attacks the inclusion of the trust in the marital estate, arguing that the judge did not, and on the evidence could not, find that the husband contributed in any way to either its acquisition or preservation. In essence, she argues that the trust "had been kept outside the marital partnership by tacit agreement of the parties." *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 621 (1987). In reviewing a judgment ordering the division of property pursuant to G. L. c. 208, § 34, we engage in the familiar two-step analysis. First, we consider the judge's findings to determine whether all relevant factors set forth in the statute were considered. *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). Second, we must reckon whether the judge's "conclusions are apparent in his findings and rulings." *Ibid*. The judge did not make specific findings regarding how the parties viewed the trust. Contrast *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956 (1986). The wife's allegations notwithstanding, the record contains no evidence of a conversation or agreement by which the judge could have found that the parties considered the asset as one hemmed in by bloodlines. In our view, the "clear implication[s]" of the judge's findings are sufficient to support the asset division ordered. *Bowring* v. *Reid*, 399

---

dix is missing the page containing the critical language defining the trustee's authority, which we have quoted in the body of this opinion.

Mass. at 268. While it is undeniable that the beneficence of the wife's family was, to a great degree, responsible for allowing the parties to enjoy the life-style and to achieve the financial success which they did, the judge also found that the husband contributed to the marriage as a partnership. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 370. The wife has elected thus far, and contends that she will continue to elect, to reinvest all the income and capital gains produced by the trust corpus (apparently to preserve it for the benefit of the parties' children). The trust, however, provided the parties with a substantial insurance policy against economic hardship and also permitted them to direct their other marital assets, such as the husband's salary, to the maintenance of a higher standard of living than their earned income allowed. The judge neither committed plain error nor abused his discretion in concluding implicitly that the trust was an asset upon which the couple, in the spirit of partnership, relied. Contrast *Bak* v. *Bak*, 24 Mass. App. Ct. at 620-621. Even after the division, the asset remains a viable resource to preserve the wife's current station in life.

Although the concept of equitable division of property under § 34 "is fundamentally based on a partnership model[,]" *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 370 (citation omitted), the statute and related case law "do[] not recognize a presumption in favor of equal division . . . ." Kindregan & Inker, Family Law and Practice § 406, at 19 (1990 & Supp.). "General Laws c. 208, § 34, confers broad discretion on a judge in . . . making equitable property divisions." *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). See *Bianco* v. *Bianco*, 371 Mass. 420, 422 (1976). It is permissible, but not mandatory, for the judge to "consider[] the monetary contributions provided by the [wife's family] in determining how to apportion the estate." *Tanner* v. *Tanner*, 14 Mass. App. Ct. 922, 923 (1982). See also *Downing* v. *Downing*, 12 Mass. App. Ct. 968, 969 (1981). In the instant case we do not think that the asset division is either plainly wrong or excessive. The judge seems to have appreciated that "[t]he underpinning of any order for division of property under

§ 34 is . . . consideration of the contributions, in the statutory terms, of each spouse, as well as other factors in existence at the dissolution of the partnership which have been traditionally applied in determining alimony." *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 376. In light of the length of the marriage, the husband's contributions, and their mutual reliance on the trust fund, the asset division sufficiently reflects the contributions of the wife's family to the marriage. See and compare *Savides* v. *Savides*, 400 Mass. 250, 253 (1987), and *Johnson* v. *Johnson*, 22 Mass. App. Ct. at 956. Contrast *Martin* v. *Martin*, 29 Mass. App. Ct. 921, 922 (1990).

The wife next contends that the asset division must be vacated because it does not reflect accurately the judge's own finding that the husband subjected her to twenty years of physical abuse.[7] In his finding regarding the conduct of the parties during the marriage, however, the judge did not find that such a "pattern of physical violence" occurred. On the contrary, as we have mentioned, he found that the husband, on occasion, became violent during arguments between the parties. While it would have been helpful for the judge to issue more detailed findings as to how this affected the equation under § 34, it is evident that he considered but did not allot to this factor any weight in the division of property. We do not agree, as the wife contends, that the judge abused his discretion by downplaying in the § 34 analysis the husband's outbursts or was plainly wrong in failing to find a pattern of physical abuse. The husband and wife were the only witnesses to testify at trial, and, as could be expected, each

---

[7]We comment on a theme which the wife has chosen to weave into her argument before this court. It is her contention that, lurking beneath the trial judge's finding and consideration of this factor, were biases, related to the age and social status of the parties, which influenced the judge's decision to treat the husband's conduct as somehow more innocuous and acceptable than similar behavior of a comparably younger person. Especially in situations involving spousal abuse, we "will not abdicate our review responsibility and will modify or reverse in those instances when the facts and law compel it, particularly . . . where the decision is manifestly unfair or the award inequitable." *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 172 (1989) (Brown, J., concurring). Such is not the case before us.

painted a different picture of the circumstances leading up to the deterioration and ultimate demise of the marriage.[8] The determination of a witness's credibility is a task for the trial judge. See *Wilde* v. *Wilde*, 350 Mass. 333, 334 (1966).

A related issue is the allocation of the marital home to the husband, despite the wife's testimony that she left in order to protect herself from the husband's escalating physical abuse. The fact that an alleged victim of spousal abuse, acting prudently, vacates the marital home and secures other living arrangements should not influence the judge in his decision regarding the ultimate disposition of that property. See G. L. c. 208, § 34B; G. L. c. 209A. The judge found facts which neither support the wife's allegation of cruel and abusive treatment nor her version of her departure from the marital home. The judge's explanation,[9] set forth in the margin, implies that he decided to award the husband title to the home because the wife departed voluntarily and purchased a new home. In the specific circumstances, the judge reached a balanced result. Taking into account the advanced age of the parties, the burden a forced sale of the home would place on the husband, the solid financial footing of the wife, and the wife's position at trial,[10] we think the judge's decision was sound.

---

[8]The husband admitted to slapping the wife in the face on six to eight occasions "to stop [her] raving which was unbearable," and smashing dishes in anger during several other arguments. The wife testified that he slapped her thirty to thirty-five times, splitting her lip on one occasion and inflicting black and blue marks on her arms on one or two other occasions. She also testified that he smashed a number of other items and locked her out of the house for a short period of time one night.

[9]The judge awarded the marital home to the husband because "the wife, having more substantial assets than the husband, has a better ability to acquire additional real estate, and in fact has already purchased a condominium in her own name. In addition, *the wife took the affirmative step of leaving the marital home in 1985 and purchasing a new home, without requesting of the Court an order that the husband vacate the marital home so that she might reside there*" (emphasis supplied).

[10]The wife has not advanced a desire to return to the home. It has been her position that the home should be sold and the proceeds divided equally. It was proper for the judge to consider the depressed market at the time of the judgment nisi.

The parties must bear their own attorney's fees. All other aspects of the judgment are affirmed.

*So ordered.*