NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-847                                        Appeals Court

AMY LEVITAN  vs.  DANIEL J. ROSEN
(and a consolidated case[1]).

No. 18-P-847.

Norfolk.     February 8, 2019. - May 6, 2019.

Present:  Green, C.J., Agnes, & Desmond, JJ.


Divorce and Separation, Division of property, Child support.
    Trust, Spendthrift provision, Distribution, Power of
    appointment, Trustee's discretion.  Power of Appointment.
    Parent and Child, Child support.


    Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on November 4, 2013.

    Civil action commenced in the Norfolk Division of the
Probate and Family Court Department on November 6, 2014.

    The cases were heard by George F. Phelan, J., and judgment
was entered by him.


    L. Richard LeClair, III, for the wife.
    Dana Alan Curhan for the husband.


_____

    [1] Daniel J. Rosen vs. Amy Levitan & others.

GREEN, C.J.  The former wife (wife) is a beneficiary of a discretionary family trust (trust) settled by her father, which contains a spendthrift provision.  Following a six-day trial, a judge of the Probate and Family Court issued a judgment of divorce nisi that, among other things, (1) treated the wife's "right" to annually withdraw five percent of her share of the trust principal as a marital asset subject to equitable distribution under G. L. c. 208, § 34, (2) excluded from the marital estate the remainder of the wife's trust interest on the basis that it is governed by the trust's spendthrift provision, and (3) included the wife's annual five percent trust principal withdrawals as income for purposes of child support.[2]  The wife appeals.  We conclude that the wife's entire interest in the trust, including her annual right to withdraw trust principal, is governed by the trust's spendthrift provision.  We further conclude that the wife's entire interest in the trust is part of the marital estate for purposes of § 34, and must be assigned to the wife exclusively in light of the spendthrift provision, and that bonuses earned by the former husband (husband) must be considered in the calculation of child support.  Accordingly, we

---

[2] The divorce judgment also disposed of a separate equity action filed by the former husband in which he sought a declaratory judgment regarding the trust.  The wife filed separate notices of appeal in the divorce and equity actions; the appeals were consolidated in this court.

vacate the portions of the judgment relating to property division and child support, and remand for further proceedings consistent with this opinion.[3]

Background. 1. The trust. The trust was established by the wife's father in 1984 and expressly provides that it is governed by Florida law. Pursuant to the terms of the trust, upon the death of the wife's father in 2007, the trust property was divided into three shares, which were set apart for the wife and each of her two siblings. The wife's share will continue to be held in trust for her lifetime, with the remainder distributed to her issue after her death.[4] The wife's share is managed by two trustees: the wife and Joblin Younger, an independent, nonbeneficiary trustee (independent trustee). Though the trust grants the independent trustee "sole discretion" to distribute "as much of the income and principal" to the wife as he "deems advisable," the trust expressly provides the wife with "the right" to annually withdraw five percent of the principal of her share (right of withdrawal).

---

[3] In her appeal, the wife also contends that the judge's finding that the trust gives the wife an independent power of appointment, not subject to the discretionary control of the trustee, was erroneous. That finding has no bearing on the judgment, and we need not -- and do not -- consider it.

[4] The remaindermen of the wife's share will receive their distributions once there is no living child of the wife under age twenty-five.

The trust provides that, once the wife has notified the independent trustee of her desire to exercise her right of withdrawal, the independent trustee "shall make such distribution to [the wife]."  The wife exercised her right of withdrawal in 2014 (receiving $96,588), 2015 (receiving $90,104) and 2016 (receiving $84,279).[5]  The trust also grants the wife a limited power of appointment, giving her the power to direct principal and income from her share for the benefit of the grantor's issue (which includes the wife's children).  The wife's right of withdrawal and limited power of appointment are both set forth in Article VII of the trust.

Article XV of the trust is a spendthrift provision prohibiting the distribution of the wife's share to creditors and other third parties (including a spouse).  To that end, the trust authorizes the independent trustee "to withhold any payment or distribution of income or principal (even though such payment or distribution is otherwise required hereunder) if the [independent trustee] in [his] sole discretion deems that such payment or distribution would not be subject to full enjoyment by the [wife]."

2.  The divorce proceedings.  The wife filed a complaint for divorce in 2013, after sixteen years of marriage.  During

---

[5] During those years, the withdrawals were shared equally between the husband and wife pursuant to an order of the court.

the marriage, the husband worked full time, while the wife worked sporadically, as she was principally responsible for homemaking and raising the parties' five children. Both parties were employed at the time of the divorce trial. At that time, the husband was earning an annual base salary of $191,984 and was eligible to receive bonuses of up to fifteen percent of his salary,[6] and the wife was earning an annual salary of $69,004. At the time of the divorce, the parties' assets were the husband's 401(k) plan, worth $127,637; the wife's trust share, which was worth over $1.67 million as of October, 2016; and bank accounts and other personalty of relatively modest value.[7]

The central issue at trial was whether the wife's trust share was includable in the marital estate for purposes of equitable distribution under G. L. c. 208, § 34. The wife contended that her share was not includable because the spendthrift provision barred distributions to third parties, including the husband. The trial judge disagreed in part, ruling that the wife's annual right of withdrawal was not governed by the spendthrift provision and was therefore

---

[6] The husband received bonuses in 2013 ($2,700), 2014 ($3,906), 2015 ($18,257), and 2016 ($17,353).

[7] The wife's share of the trust is comprised of $1,028,539 in stocks, mutual funds, and bonds, along with real property valued at $645,000. The real property consists of a house purchased by the trust in 2008, which the wife currently occupies rent-free.

includable in the marital estate, while the remainder of her trust share "was not a marital asset subject to division." Pursuant to the divorce judgment, the wife received her annual right of withdrawal under the trust, the husband received his 401(k), and the husband was ordered to pay weekly child support of $107 to the wife. In calculating child support, the judge included the wife's right of withdrawal as income to her, and excluded the husband's annual bonuses on the ground that they fluctuated and were not guaranteed. The present appeal by the wife followed.

Discussion. 1. Spendthrift provision. To determine the scope of the spendthrift provision of the trust, we look to Florida law. When interpreting the provisions of a trust, the guiding principle is "to determine the intention of the settlor and give effect to his wishes." Gilbert v. Gilbert, 447 So. 2d 299, 301 (Fla. Dist. Ct. App. 1984). "If the trust language is unambiguous, the settlors' intent as expressed in the trust controls and the court cannot resort to extrinsic evidence." Roberts v. Sarros, 920 So. 2d 193, 195 (Fla. Dist. Ct. App. 2006). "This intention should not be determined by isolated words and phrases but rather the instrument as a whole should be considered and the testator's general plan ascertained." First Nat'l Bank of Fla. v. Moffett, 479 So. 2d 312, 313 (Fla. Dist. Ct. App. 1985). "[W]here there is ambiguity or uncertainty

arising from the language used, construction of the instrument is necessary." Id. "In construing the instrument, words should be given their ordinary and usual meaning." Id. "Florida has a public policy favoring spendthrift provisions in trusts and protecting a beneficiary's trust income . . . ." Berlinger v. Casselberry, 133 So. 3d 961, 966 (Fla. Dist. Ct. App. 2013).[8]

Here, any uncertainty in the meaning or operation of the spendthrift provision can be attributed to the facial conflict between the wife's right of withdrawal and the independent trustee's discretion under the spendthrift provision to withhold "any payment or distribution of income or principal (even though such payment or distribution is otherwise required hereunder)." The judge concluded that the spendthrift provision does not apply to the wife's right of withdrawal because the spendthrift provision encompasses only a "payment or distribution," and makes no mention of a "withdrawal." However, though termed a "withdrawal," the sentence of Article VII detailing the procedure required to request such a withdrawal reads in full as follows: "Such right of withdrawal shall be exercised in each case by the [wife] notifying the Trustee in writing to that effect, specifying the cash or assets at current market value which [she] desires to withdraw; and promptly thereafter the

---

[8] We note that Florida law appears to be consistent with Massachusetts law in all material respects on this question.

Trustee shall make such <u>distribution</u> to [her]" (emphasis added).
This language makes it clear that any funds withdrawn pursuant
to the right of withdrawal are "distributions," and accordingly
are not excluded from the application of the spendthrift
provision.  Furthermore, this interpretation is consistent with
the settlor's express intent:  "It is the primary intent of this
Article . . . that the [wife] shall be primarily provided for
and that the Trustee shall distribute no amounts to any person
other than the [wife] unless the Trustee determines that [her]
welfare will not be unreasonably jeopardized, taking into
account all other resources available to [her]."[9]

The judge's reliance on <u>In re Brown</u>, 303 F.3d 1261, 1263-
1264, 1266-1268 (11th Cir. 2002), and <u>Miller</u> v. <u>Kresser</u>, 34 So.
3d 172, 175 (Fla. Dist. Ct. App. 2010), is misplaced.  In <u>Brown</u>,
<u>supra</u> at 1266, the United States Court of Appeals for the
Eleventh Circuit stated that "Florida law will not protect
assets contained within a spendthrift trust to the extent the
settlor creates the trust for her own benefit, rather than the
benefit of another."  As such, the case stands simply for the
proposition that a trust created for the sole benefit of the
settlor will not be effective to shield assets held by the trust

---

[9] Despite the husband's contentions, this language
explicitly applies to all the distributions detailed in all of
Article VII of the trust, which includes the right of withdrawal
provision.

from creditors of the settlor. It is inapposite to the circumstances of the present case, as the trust was established by the wife's father and not by the wife herself. In Miller, supra, the District Court of Appeal stated that "[c]ourts have invalidated spendthrift provisions where a trust provides a beneficiary with express control to demand distributions from the trust or terminate the trust and acquire trust assets." As we have discussed above, the language of the trust expressly gives the independent trustee the discretion to withhold the funds otherwise subject to the wife's right of withdrawal, and indeed instructs the independent trustee to do so in circumstances where a distribution would be exposed to creditors of the beneficiary. The judge's conclusion that the wife's right of withdrawal was not subject to the spendthrift provision was erroneous.

2. Equitable distribution under G. L. c. 208, § 34. A party's estate for purposes of equitable distribution under G. L. c. 208, § 34, "includes all property to which a party holds title, however acquired." Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 110 (2016), quoting Williams v. Massa, 431 Mass. 619, 625 (2000). "Whether a trust may be included in the . . . marital estate requires close examination of the particular trust instrument to determine whether the interest is a 'fixed and enforceable' property right, . . . or 'whether the party's

interest is too remote or speculative' to be included."

Pfannenstiehl, supra at 111-112, quoting D.L. v. G.L., 61 Mass.

App. Ct. 488, 496-497, 499 (2004). "The question turns 'on the

attributes' of the specific trust at issue, rather 'than on

principles of general application,' . . . and therefore requires

evaluation of the facts and circumstances of each case."

Pfannenstiehl, supra at 112, quoting Lauricella v. Lauricella,

409 Mass. 211, 216 (1991). "[W]hile a judge is not necessarily

precluded from including within the marital estate for § 34

purposes a party's beneficial interest in a discretionary

trust," D.L. v. G.L., supra at 496-497, "[i]nterests in

discretionary trusts generally are treated as expectancies and

as too remote for inclusion in a marital estate, because the

interest is not 'present [and] enforceable'; the beneficiary

must rely on the trustee's exercise of discretion, does not have

a present right to use the trust principal, and cannot compel

distributions." Pfannenstiehl, supra. "If an interest in a

trust is determined after such examination to be speculative or

remote rather than fixed and enforceable, and thus more properly

characterized as an expectancy, the interest is to be considered

under the G. L. c. 208, § 34, criterion of 'opportunity of each

[spouse] for future acquisition of capital assets and income.'"

Id., quoting Williams v. Massa, supra at 629. "Whether [a

party's] interest in the trust property is part of his estate

for purposes of [G. L. c. 208,] § 34[,] is a question of law that we are in as good a position as the probate judge to answer."  Lauricella, supra at 213.

Here, the wife's share of the trust vested upon the death of her father in 2007.  However, as discussed above, the wife's entire share is governed by the trust's spendthrift provision. In ruling that the spendthrift-controlled portion of the wife's share was a mere expectancy rather than a marital asset under § 34, the trial judge emphasized the absence of an "ascertainable standard" guiding the trustee's exercise of discretion.  See Pfannenstiehl, 475 Mass. at 113 ("'ascertainable standard' . . .  limits the discretion of the trustee, who is obligated to make distributions with an eye toward maintaining the beneficiary's standard of living in existence at the time the trust was created").

However, the mere fact that a trustee's discretion is "uncontrolled" (i.e., not governed by an ascertainable standard) does not necessarily preclude a trust's inclusion in the marital estate.  See Davidson v. Davidson, 19 Mass. App. Ct. 364, 371-372 (1985).  Indeed, in Pfannenstiehl, supra at 113-115, the inquiry did not turn on whether the trust contained an ascertainable standard.  Rather, the Supreme Judicial Court held that the husband's interest in a discretionary trust was a mere expectancy because the class of beneficiaries was open

(rendering the husband's one-eleventh interest susceptible to future reduction), and the trust was clearly intended to benefit multiple generations.  Id.  Similarly, in D.L., 61 Mass. App. Ct. at 497, we held that the husband's beneficial interest in a discretionary trust was not includable under § 34 because "payments from principal to the beneficiaries [were] to be made, if at all, in the 'uncontrolled' discretion of the trustees," "in the thirty-eight year history of the trust, there ha[d] never been a distribution of principal from the trust to the husband," and the trust "[wa]s generational in nature," designed to "benefit the long-term (not near term) needs of the beneficiaries" (which included "not only the husband but his issue and [their] spouses").

Here, by contrast, the wife's share of the trust is not susceptible to reduction (as she is the sole beneficiary of her share presently held in trust), the beneficiary class is closed, and the "primary intent" of the trust is to provide for the wife rather than for subsequent generations.[10]  Accordingly, the wife's trust interest in this case is sufficiently distinguishable from those deemed mere expectancies in

_____

[10] The trust expressly provides that "[i]t is the primary intent of this [trust] . . . that the [wife] shall be primarily provided for" and "the Trustee shall have no liability in favoring [the wife] over, or to the complete exclusion of, the remaindermen of this share."

Pfannenstiehl and D.L. Moreover, though the independent trustee's discretion is not guided by an ascertainable standard, there is some degree of predictability built into the trust by virtue of the wife's annual right to withdraw five percent of the trust principal, albeit subject to the spendthrift provision.[11]

We therefore conclude that the wife's trust interest may properly be considered an asset subject to equitable distribution under § 34. See S.L. v. R.L., 55 Mass. App. Ct. 880, 883-884 & n.10 (2002) (wife's one-fifth remainder interests in four trusts were includable in marital estate, as remaindermen classes were fixed for those trusts); Comins v. Comins, 33 Mass. App. Ct. 28, 30 (1992) (wife's vested beneficial interest in discretionary trust with closed beneficiary class was includable in marital estate); Davidson, 19 Mass. App. Ct. at 371-372 (husband's remainder interest in father's testamentary trust, which granted trustees "uncontrolled discretion" and contained spendthrift provision, was part of marital estate because husband's remainder interest was fixed at time of father's death, despite that value of

_____

[11] It appears the trustee may only withhold the annual withdrawal if it violates the spendthrift provision, and "the existence of a spendthrift provision alone does not bar equitable [distribution] of a trust." Pfannenstiehl, 475 Mass. at 115.

interest was uncertain).  See also Lauricella, 409 Mass. at 216-217 (husband's vested, one-half beneficial interest in trust was includable under § 34 as husband occupied two-family house owned by trust, beneficiary class was closed, and husband only had to outlive trust's natural termination date to receive share of trust property).  Because the judge here did not include the wife's entire trust share in the marital estate when assigning property under § 34, the portion of the divorce judgment pertaining to property division must be vacated and remanded.  Though the wife's share of the trust is includable in the marital estate, it may only be assigned to the wife in light of the spendthrift provision.  Accordingly, the wife's trust share shall be distributed exclusively to the wife, and the distribution of the remaining marital assets is left to the judge's discretion after considering the relevant § 34 factors on remand.  See Davidson, supra at 373.

3.  Child support.  In light of the intertwined nature of the property division and child support determinations made by the judge, the child support component of the divorce judgment must be vacated and remanded as well.  We nevertheless briefly touch upon some of the issues that are likely to arise on remand in connection with child support.  In determining the parties' respective incomes for purposes of child support, the judge included the wife's right of withdrawal and excluded the

husband's bonuses. The definition of "income" under the Massachusetts Child Support Guidelines (2018) (Guidelines) is broad, expressly including "bonuses" and interest income from trusts. See Guidelines § I-A. To the extent the judge declined to consider the husband's bonuses based solely on their fluctuating, nonguaranteed nature, rather than on criteria identified in the Guidelines,[12] this was an abuse of discretion. Moreover, while the judge is not necessarily prohibited, as a matter of law, from treating the wife's receipt of trust principal (which has been assigned to her in the property division) as a stream of income for purposes of child support, the judge should "look to the equities of the situation"; in doing so, the judge's task is to determine whether it is "possible . . . to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any . . . support obligations (thus avoiding redistribution by . . . [a] support order of specific assets that already have been equitably assigned)" (citations omitted).

---

[12] We do not suggest the judge is required to award child support based on the husband's bonus income. The judge may, in his discretion, decline to award child support on any additional income above the first $250,000 of the parties' combined available income, see Guidelines § II-C, and may also deviate from the minimum presumptive order required by the Guidelines, see Guidelines § IV. However, in exercising such discretion, the judge must demonstrate his consideration of appropriate criteria. See id. (circumstances supporting deviation). See also Guidelines, Principles.

Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 528 nn.4, 5 (2016).

Conclusion.  The portions of the divorce judgment pertaining to property division and child support, and the declarations appearing in paragraph 10 of the judgment, are vacated, and the matter is remanded for further proceedings consistent with this opinion.  The judgment is otherwise affirmed.  The temporary child support order in effect prior to the entry of the divorce judgment shall be reinstated and remain in place during the pendency of the remand.

So ordered.