NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-520

R.B.

vs.

C.C.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

C.C. (wife), the former spouse of R.B. (husband), appeals from a judgment of divorce nisi (divorce judgment) issued by a judge of the Probate and Family Court, challenging various aspects of the property division. We affirm.[1]

Background. We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion. See Pierce v. Pierce, 455 Mass. 286, 288 (2009).

During their long-term marriage, the parties enjoyed an "affluent and upper class" lifestyle.[2] The marital lifestyle was

---

[1] The wife also filed a notice of appeal from a supplemental judgment regarding the award of attorney's fees. As she makes no separate argument regarding that judgment, we affirm it as well.

[2] The parties purchased the 6,000 square foot, "luxury" marital home for $3.265 million, to which they made "significant

funded primarily with the husband's income,[3] supplemented by income from the wife's investment accounts and substantial financial contributions from the wife's parents. In addition to making annual cash gifts and "periodic larger gifts,"[4] the wife's parents gave her valuable interests in various entities and several pieces of real property. Moreover, in January 2012, the wife's mother settled an irrevocable trust, governed by Virginia law, for the benefit of the wife and the wife's descendants. The irrevocable trust was indirectly funded with proceeds from the sale of assets owned by hospital entities established by the wife's father.[5] As a result of the wife's family wealth, the parties formed a "reasonable expectation of future financial security" that affected their "spending and saving habits (including towards retirement assets[6]), [and] the types of jobs [the] [h]usband took or didn't take," among other things.

---

renovations." They traveled frequently (including to various European destinations, Caribbean islands, and ski resorts), employed a nanny, sent their four children to private schools, owned boats, maintained a yacht club membership, and made "significant expenditures" on travel, education, and various residences that they owned or leased.

[3] The husband worked as a physician throughout the marriage, earning approximately $474,000 per year at the time of trial.

[4] In addition to annual gifts, the wife's parents made four "large gifts" totaling $5.35 million between 2003 and 2012.

[5] The wife's parents owned a number of hospital-related entities; assets owned by those entities were sold in 2012 for $227.5 million.

[6] The parties did not "aggressively save" for retirement because of their "expectation that they would continue to benefit from the [wife's] family wealth."

In June 2015, the husband filed a complaint for divorce; the wife then filed a counterclaim for divorce. Following an eleven-day trial held between October 2018 and June 2019, the judge issued the divorce judgment dividing the marital estate in August 2020. The judge found that, consistent with a June 2018 stipulation filed by the parties, the wife had already bought out the husband's interest in the former marital home, paying him $1.3 million as an "advance distribution of assets."[7] The judge determined that the remaining assets in the marital estate were worth more than $46 million, with over $43 million of those assets attributable to the wife. Among the assets included in the marital estate was the wife's interest in the irrevocable trust, which the judge found to be worth $12,153,553. The judge concluded that the husband was entitled to twenty-five percent of the value of the irrevocable trust, and thirty-five percent of the remaining marital estate assets. To effectuate the property division, the judge ordered the wife to make a lump sum payment to the husband of $12,493,917 within sixty days of the divorce judgment. The judge found that the wife had sufficient

---

[7] During the pendency of the divorce proceedings, the parties entered into a stipulation providing that they would equally divide the $2.6 million equity in the marital home, and that the wife would buy out the husband's share. The wife paid the husband $1.3 million pursuant to their stipulation, which he deposited in his UBS investment accounts (which accounts were excluded from the asset division).

assets to make the lump sum payment without utilizing funds from the irrevocable trust.

The wife thereafter filed a postjudgment motion requesting, among other things, "an evidentiary hearing on the tax implications of liquidating assets" to make the lump sum payment. The judge denied the wife's request.[8] The present appeal by the wife followed.

Discussion. In an appeal challenging the division of property in a divorce judgment, "[w]e review the judge's findings to determine whether she considered all the relevant factors under G. L. c. 208, § 34, and whether she relied on any irrelevant factors." Zaleski v. Zaleski, 469 Mass. 230, 245 (2014). "We will not reverse a judgment with respect to property division unless it is 'plainly wrong and excessive.'" Id., quoting Baccanti v. Morton, 434 Mass. 787, 793 (2001).

Here, the wife claims error in the judge's (1) inclusion of her irrevocable trust interest in the marital estate; (2) valuation of her revocable trust account (Bessemer account); (3) treatment of a promissory note held by one of the entities in which she owns an interest; (4) failure to treat as advance marital estate distributions allowances made to the husband for attorney's fees during the pendency of the divorce proceedings;

---

[8] It is undisputed that the wife made the lump sum payment to the husband.

4

and (5) denial of her request for an evidentiary hearing on the tax consequences of the lump sum payment.  We address the wife's arguments in turn.

1.  The irrevocable trust.  The wife first contends that the judge erred in treating her interest in the irrevocable trust as a property interest subject to equitable distribution under G. L. c. 208, § 34.  She asserts, among other things, that her interest is too remote and speculative for inclusion in the marital estate because she is but one of several beneficiaries in an open class.  We disagree.

"Whether a trust may be included in the . . . marital estate requires close examination of the particular trust instrument to determine whether the interest is a 'fixed and enforceable' property right, . . . or 'whether the party's interest is too remote or speculative' to be included."  Levitan v. Rosen, 95 Mass. App. Ct. 248, 253 (2019), quoting Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 111-112 (2016).  This question, which we review de novo, "turns 'on the attributes' of the specific trust at issue."  Levitan, supra, quoting Pfannenstiehl, supra at 112.[9]

_____

[9] "If an interest in a trust is determined after such examination to be speculative or remote rather than fixed and enforceable, and thus more properly characterized as an expectancy, the interest is to be considered under the G. L. c. 208, § 34, criterion of 'opportunity of each [spouse] for future

5

Although Massachusetts law governs our ultimate determination whether the wife's trust interest is includable in the marital estate under § 34, Levitan, 95 Mass. App. Ct. at 253, we look to Virginia law when examining the trust to ascertain the nature of the wife's interest. Id. at 251.[10] "In considering the language of a trust agreement, the intent of the grantor controls." Harbour v. SunTrust Bank, 278 Va. 514, 519 (2009). "In ascertaining that intention, we must examine the document as a whole and give effect, so far as possible, to all its parts." Frazer v. Millington, 252 Va. 195, 199 (1996).

Here, while the trust identifies the beneficiaries as both the wife and her "descendants living from time to time," a "plain reading" of the entire trust instrument, "giving expression to all [its] provisions," shows the settlor's intent to prioritize the wife over all other beneficiaries. Frazer, 252 Va. at 201. The trust is entitled "IRREVOCABLE TRUST AGREEMENT . . . FOR THE BENEFIT OF [THE WIFE]." The "DISPOSITIVE PROVISIONS" section of the trust provides that "[d]uring her lifetime, . . . [the wife], shall be the 'Trust Beneficiary.'" The wife's right of withdrawal has first

_____

acquisition of capital assets and income.'" Levitan, 95 Mass. App. Ct. at 253, quoting Pfannenstiehl, 475 Mass. at 112.
[10] Interpretation of the trust, and the determination whether the wife's interest is includable in marital estate, are questions of law we review de novo. See Levitan, 95 Mass. App. Ct. at 251-253.

6

priority over the rights of withdrawal of all other beneficiaries.  The wife's interest in the trust is not subject to complete divestment, unlike the interests of all other beneficiaries, because the trust grants her a power of appointment to determine who will receive the remaining trust corpus upon her death.  See Va. Code Ann. § 64.2-701 (defining "[p]ower of appointment" as "a power that enables a powerholder acting in a nonfiduciary capacity to designate a recipient of an ownership interest in . . . the appointive property").  The trust also places special "[d]istribution [l]imitations" on the wife's grandchildren and more remote descendants, conditioning their eligibility for distributions on, among other conditions, being "hard working and productive member[s] of society."

In addition to being the "Trust Beneficiary," the wife is the sole trustee.  The trust grants the wife discretion to make distributions of income and principal to herself and her descendants.  Her exercise of this discretion is guided by an ascertainable standard, under which she may make distributions that she "deem[s] advisable for any such beneficiary's maintenance, support, health and education."  See Va. Code Ann. § 64.2-701 (defining "[a]scertainable standard" as "a standard relating to an individual's health, education, support, or maintenance within the meaning of § 2041[b][1][A] or 2514[c][1] of the Internal Revenue Code of 1986 and any applicable

7

regulations"). The wife's authority to make distributions to herself has few limitations. Most notably, she is prohibited from making distributions that would violate the trust's spendthrift provision.[11] See Va. Code Ann. § 64.2-701 (defining "[s]pendthrift provision" as "a term of a trust that restrains both voluntary and involuntary transfer of a beneficiary's interest"). See also Va. Code Ann. § 64.2-743. She also must ensure that, in making distributions to herself, she does not breach her fiduciary duties to the other beneficiaries. See, e.g., Va. Code Ann. § 64.2-765 (duty of impartiality); Va. Code Ann. § 64.2-764 (duty of loyalty).[12] The wife's discretion to make distributions to herself is therefore broad and is only subject to judicial intervention if she has "clearly abused" it. Rafalko v. Georgiadis, 290 Va. 384, 396 (2015).

We are unpersuaded by the wife's contention that the presence of an ascertainable standard "limits [her] control" thereby rendering her trust interest too remote and speculative to be treated as a property right. Our courts generally view the presence of an ascertainable standard in a discretionary trust as a factor weighing in favor of treating a discretionary

---

[11] The spendthrift clause prohibits the trustee from making any distribution to a beneficiary if such distribution would be subject to attachment or assignment.
[12] "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Va. Code Ann. § 64.2-792(A). Removal is one remedy. Va. Code Ann. § 64.2-792(B)(7).

8

trust interest as an enforceable property right. See, e.g., Jones v. Jones, 103 Mass. App. Ct. 223, 232-233 (2023); Comins v. Comins, 33 Mass. App. Ct. 28, 30-31 (1992). Here, because the wife is the sole trustee, her right to receive distributions is not subject to the condition precedent of a disinterested trustee having first exercised his or her discretion. See Pfannenstiehl, 475 Mass. at 114. Moreover, the ascertainable standard guiding the wife's exercise of discretion authorizes distributions to herself for maintenance, i.e., "with an eye toward maintaining [her] standard of living in existence at the time the trust was created." Id. at 113. At the time that the trust was created, the wife was maintaining an "affluent and upper class" lifestyle involving "[s]ignificant expenditures." It is thus difficult to conceive of distributions to the wife that might exceed the amount needed to fund her exceptionally high standard of living and thus be deemed inconsistent with the terms and purpose of the trust. See NationsBank of Va., N.A. v. Estate of Grandy, 248 Va. 557, 561 (1994) ("Generally, a trustee's discretion is broadly construed," so long as she "exercise[s] . . . good faith and reasonable judgment to promote the trust's purpose"). Moreover, the judge found that the wife has already made a series of transactions as trustee (including

9

a large withdrawal to satisfy a note due to her) further demonstrating her level of access and control.[13]

We are likewise unpersuaded by the wife's contention that the existence of an open beneficiary class renders her trust interest too remote and speculative for inclusion in the marital estate. The wife relies on Pfannenstiehl, 475 Mass. at 114, for the proposition that her discretionary trust interest was too remote and speculative in part because she was a member of the open beneficiary class. That case, however, is readily distinguishable from the case at hand. In Pfannenstiehl, supra, unlike here, the husband was the not the trustee, he did not have a power of appointment, and the settlor's intent was not to principally benefit the husband -- rather, it was to provide for multiple generations. Compare id., with Jones, 103 Mass. App. Ct. at 233-234 (wife's trust interest includable in marital estate where trustee's discretion subject to enforceable standard, wife held power of appointment, and settlor's intent was to benefit wife rather than subsequent generations); Levitan, 95 Mass. App. Ct. at 249-250, 254 (wife's trust

_____

[13] The judge found that, in 2013, the wife "as trustee, directed $7,800,502 to be paid out from the [i]rrevocable [t]rust to her individually in satisfaction of a [n]ote due to her individually. The proceeds were deposited into [the] [w]ife's [r]evocable [t]rust . . . but a year later the funds were transferred by [the] [w]ife back into the [i]rrevocable [t]rust."

10

interest includable in marital estate where, among other things, wife was cotrustee with annual right of withdrawal but independent cotrustee had uncontrolled discretion regarding distributions, wife held limited power of appointment, and settlor's primary intent was to provide for wife rather than subsequent generations); Ruml v. Ruml, 50 Mass. App. Ct. 500, 511-512 & nn.17, 18 (2000) (trust settled by husband, of which he was neither trustee nor beneficiary, having open beneficiary class including his issue, was properly treated as part of marital estate, given husband's retention of broad powers of appointment in trust assets); Comins, 33 Mass. App. Ct. at 30-31 & n.4 (wife's trust interest includable in marital estate where wife was beneficiary but not trustee, wife held power of appointment, and trustee's discretion was subject to ascertainable standard).

Further support for treating the irrevocable trust as a marital asset is contained in the judge's findings regarding the parties' reliance on the wife's family wealth, which allowed them to maintain a more affluent lifestyle than they could have with the husband's salary alone. See Comins, 33 Mass. App. Ct. at 32.[14] Although the wife seeks to distinguish Comins on the

---

[14] In Comins, 33 Mass. App. Ct. at 32, this court affirmed the inclusion of the wife's trust interest in the marital estate, noting that the trust "provided the parties with a substantial insurance policy against economic hardship and also permitted

basis that she and the husband did not rely specifically on the irrevocable trust (because it was settled shortly before the irretrievable breakdown of the marriage), the judge's findings reflect that the trust was indirectly funded with proceeds from the sale of the hospital entities' assets, which entities formed the bulk of the wife's family wealth that the parties relied on throughout the marriage. Accordingly, the judge's findings sufficiently demonstrate reliance by the parties on the wife's family wealth that was redirected into the irrevocable trust toward the end of the marriage -- which reliance formed the basis for the parties' elevated lifestyle during the marriage. See Comins, supra.

In light of the foregoing, we conclude that the wife's trust interest is sufficiently "fixed and enforceable" to constitute a property interest, Levitan, 95 Mass. App. Ct. at 253, quoting Pfannenstiehl, 475 Mass. at 111-112, and the judge therefore permissibly included it in wife's estate, and assigned it to her, for purposes of equitable distribution under G. L. c. 208, § 34. Levitan, supra at 255.

---

them to direct their other marital assets, such as the husband's salary, to the maintenance of a higher standard of living than their earned income allowed." The court held that "[t]he judge neither committed plain error nor abused his discretion in concluding implicitly that the trust was an asset upon which the couple, in the spirit of partnership, relied." Id.

2.  Bessemer account valuation.  The wife next contends that the judge erroneously inflated the value of her Bessemer account by approximately $1.3 million by overlooking evidence that the wife used funds from that account to buy out the husband's $1.3 million interest in the former marital home.  The wife asserts that this resulted in the husband being "overpaid" by $455,000.  We disagree.

In June 2018, the parties agreed to equally divide the marital home equity of $2.6 million, with the husband receiving a $1.3 million buyout payment and the wife retaining the home.  The husband deposited the $1.3 million buyout payment into two UBS accounts.  Both the marital home and the UBS accounts were excluded from the property division as already-divided assets.  The wife's Bessemer account, however, was included in the property division.  The judge found that the Bessemer account balance had decreased by approximately $1.3 million between December 2017 ($13,454,167) and the time of trial ($12,074,505), without explanation.  The judge ultimately valued the Bessemer account as of December 2017 ($13,454,167), treating it as if the $1.3 million reduction had never happened, and assigned the husband thirty-five percent of that amount ($4,708,958.45).  This left the wife with the remaining balance of $7,365,546.55 ($12,074,505 minus $4,708,958.45).

13

The wife claims that the judge committed reversible error because there was "ample evidence" that the $1.3 million deduction in the Bessemer account balance was attributable to her buyout of the husband's share of the marital home equity. We are not persuaded that the wife has demonstrated clear error in the valuation of the Bessemer account,[15] especially where the judge found that the wife's financial statements "have not always reflected actual values . . . and have underestimated the values of some of her assets, sometimes in significant ways." See Kendall v. Selvaggio, 413 Mass. 619, 620-621 (1992) ("A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [quotations and citations omitted]). However, assuming arguendo that the wife's calculations were correct, we still would discern no error in the judge's treatment of the Bessemer account.

As a result of the predivorce marital home buyout and the division of the Bessemer account ordered by the judge, the wife was left with nearly $10 million from the division of those two assets. If, however, there had been no predivorce buyout of the marital home (with the equity instead being divided equally in

_____

[15] Indeed, the wife concedes in her brief that there was no "direct proof" of this presented to the judge.

14

the divorce judgment and no $1.3 million decrease in the Bessemer account balance), the wife still would have been left with approximately $10 million from the division of those two assets.[16]  Although the wife claims that the judge's failure to deduct the marital home buyout payment from the Bessemer account resulted in a $455,000 overpayment to the husband, it instead prevented a $1.3 million overpayment to the wife.  The parties agreed to divide the marital home equity of $2.6 million equally, with the wife retaining the home and using marital estate funds to buy out the husband's one-half share.  This transaction was intended to result in each party netting $1.3 million.  Because both the total marital home equity ($2.6 million) and the accounts holding the husband's $1.3 million buyout payment were excluded from the property division, the $1.3 million in marital estate funds that the wife used to buy out the husband's share was properly added back into the marital estate (by valuing the Bessemer account as of December 2017, before the buyout payment occurred).  This ensured that the

---

[16] If there had been no buyout, and the marital home equity had instead been divided equally in the divorce judgment, the wife would have received $1.3 million in equity plus approximately $8,745,209 (representing sixty-five percent of the December 2017 Bessemer account balance).  Instead, the wife retained the entire marital home having $2.6 million in equity, and the remaining Bessemer account balance of approximately $7,365,547 (after paying the husband thirty-five percent of the December 2017 balance).

wife's net from the marital home buyout transaction remained $1.3 million (rather than $2.6 million, which would have been the case if she were permitted to convert $1.3 million of marital estate funds into real estate equity that was excluded from the property division).

Accordingly, we cannot say that the judge's valuation of the Bessemer account was clearly erroneous or that it resulted in a "plainly wrong and excessive" division of property. Zaleski, 469 Mass. at 245, quoting Baccanti, 434 Mass. at 793.

3. The promissory note. The wife next contends that the judge overvalued one of the family entities in which she holds an interest (entity 1), by erroneously finding that a $21 million promissory note due to entity 1 from another family entity (entity 2) remained outstanding. The wife contends that this was error where the "competent evidence" at trial demonstrated that the note had been repaid. We disagree.

The wife contends that the note's absence from entity 1's 2014 year-end balance sheet is proof of its repayment in December 2014. She further contends that the "only contrary evidence was rank speculation by a nonpercipient witness." However, the judge's ultimate finding that the note had not been repaid was based on two credibility determinations, neither of which we are inclined to disturb. See Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995). First, the judge found that the

16

balance sheet was unreliable as it contained inaccuracies and redactions. Second, the judge credited the testimony of the wife's brother, who had been responsible for running entity 1 for years and was well-acquainted with its financial holdings and dealings. The brother testified that the note likely had not been repaid. In light of the judge's credibility assessments, the judge was well within her discretion to implicitly conclude that the brother's testimony represented the best available evidence of the status of the promissory note. Accordingly, we discern no error in the valuation of the wife's interest in entity 1. See Kendall, 413 Mass. at 620-621.

4. Allowances for attorney's fees. The wife next contends that the judge erred in failing to consider, and treat as advances of the husband's share of the marital estate, two "allowances" totaling $475,000 made to him during the pendency of the divorce action for the payment of his attorney's fees. [W's br. at 41-42]. The wife asserts that this resulted in a plainly wrong and excessive award of marital property to the husband. We disagree.

The first allowance in the amount of $250,000 occurred in 2017; there is no indication in the 2017 temporary order that this would be treated as an advance of the marital estate. The second allowance in the amount of $225,000 occurred in 2018; although the 2018 temporary order stated that the second

17

allowance would be treated as an "advance distribution of the marital estate," there is no indication in the judge's findings that she did not treat it as such in the property division.  The judge assigned a substantially larger portion of the marital estate to the wife.  The judge determined that the husband was entitled to attorney's fees "in addition to the monies paid during the pendency of trial."  The judge also made findings demonstrating the basis for the fee award.[17]  On this record, we cannot say that the judge, in fashioning the property division here, failed to consider the 2017 and 2018 allowances made to the husband.[18]

5.  Tax consequences.  Finally, the wife contends that it was an abuse of discretion for the judge to deny her request, raised for the first time in a postjudgment motion, for an evidentiary hearing regarding the potential tax consequences to

_____

[17] The judge found, among other things, that the wife's inaccurate financial disclosures "resulted in the obfuscation of the valuation of" the wife's family assets, resulting in the husband's "incursion of tens of thousands of dollars in additional legal fees."

[18] Moreover, even if the judge had erroneously failed to consider them (which we do not suggest), we would deem such error "insignificant" given that the allowances amount to less than one percent of the total marital estate.  Ross v. Ross, 50 Mass. App. Ct. 77, 81-82 (2000) ("Mathematical precision is not required of equitable division of property"; error amounting to fraction of percentage of marital estate deemed "insignificant" [citations omitted]).

18

her resulting from liquidating assets to make the lump sum property division payment to the husband.  We disagree.

In dividing the marital estate, "where the issue of tax consequences has been raised and the judge has been provided with 'appropriate evidence in the record,' the judge should consider the tax consequences arising from a judgment" (citation omitted).  L.J.S. v. J.E.S., 464 Mass. 346, 350 (2013).  Parties may ask the judge to consider tax consequences by filing "a postjudgment motion . . . supported by citations to tax law and regulations and by illustrative calculations, to amend the judgment so as to alleviate undue adverse tax consequences" (emphasis added).  Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 867 (1989).

Here, the wife's postjudgment motion did not contain any citations to tax law and regulations, nor did it contain any illustrative calculations.  Fechtor, 26 Mass. App. Ct. at 867.  Instead, the wife merely asserted in her motion that "the evidence does not support a finding that [she] has access to cash assets sufficient . . . to make a cash lump-sum payment," thus "she will have to liquidate investments and will incur significant capital gains taxes.  It is inequitable for the [w]ife, alone, to bear the burden of the taxes on capital gains due on the liquidation of investment assets in order to pay a cash lump-sum property payment."  Where, as here, a party has

failed to include "reasonably instructive" information regarding potential tax consequences in her postjudgment motion, "the probate judge is not bound to grapple with the tax issues," nor is the judge required to grant a request for an evidentiary hearing. Id. at 866. See D.L. v. G.L., 61 Mass. App. Ct. 488, 510-511 (2004) (affirming denial of husband's request to "tax effect" his lump sum property division payment to wife where he failed to "failed to submit adequate evidence at trial concerning tax issues" and failed "to provide the court with citations to tax law, illustrative calculations, or other pertinent information" in his postjudgment motion to amend). Accordingly, it was not an abuse of discretion for the judge to deny the wife's postjudgment request for an evidentiary hearing on the tax consequences of the lump sum payment.[19]

Judgment affirmed.

Supplemental judgment affirmed.

By the Court (Vuono, Hand & Hodgens, JJ.[20]),

*Joseph F. Stanton*

Clerk

Entered: October 6, 2023.

---

[19] The husband is entitled to the costs of the appeal in the ordinary course pursuant to Mass. R. A. P. 26 (a), as appearing in 481 Mass. 1655 (2019). His request for double costs and appellate attorney's fees is denied.
[20] The panelists are listed in order of seniority.

20