**ESTATE OF Beatrice WEINSTEIN, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–1763.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 7, 1986.

Decided June 4, 1987.

Jack Weinstein, Saginaw, Mich., for plaintiff-appellant.

Michael L. Paup, Glenn L. Archer, Jr., Tax Div.—Dept. of Justice, Washington, D.C., Roger M. Olsen, Robert A. Bernstein, Nancy G. Morgan, argued, for defendant-appellee.

Before ENGEL, JONES and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is a federal estate tax case that turns on whether a decedent's interest in a certain trust established by the decedent's late husband was capable of valuation under "recognized valuation principles," a term used in the pertinent Internal Revenue Service regulations. If the widow's interest could be so valued, her estate was entitled to an estate tax credit in the amount of a portion of the taxes paid on the husband's estate, the husband having predeceased his wife by six months. (See 26 U.S.C. § 2013, which provides for such a tax credit, under certain circumstances, where the decedent received property from the estate of someone whose death preceded that of the decedent by up to ten years.) No estate tax credit was available if the widow's beneficial interest in the trust was not susceptible of rational valuation.

The trial court entered summary judgment in favor of the government, holding that no credit was available under § 2013 because the trustee had such broad discretion over the management of the trust and over the disposition of its principal and income that as a matter of law the widow's interest was incapable of valuation. We are satisfied that it was not impossible to arrive at a rational valuation of the widow's interest, and we shall therefore reverse the trial court's judgment.

\* \* \*

The decedent's husband, Mr. Simon Weinstein, set up an inter vivos trust in May of 1976, twelve days before he died of a heart attack. Under the trust's terms a portion of the trust property equal in value to 50% of Mr. Weinstein's adjusted gross estate was to go into a marital deduction trust on Mr. Weinstein's death. (The value of the trust property ultimately assigned to the marital deduction trust proved to be approximately $194,000.) The widow, who was given a testamentary power of appointment over the principal, was to receive the entire income of the marital deduction trust during her lifetime, and the trustee was authorized to invade the principal, if necessary, in order to maintain her in the standard of living to which she was accus-

tomed. The balance of the assets in the inter vivos trust—a balance that proved to be worth approximately $155,000—was to be held during the widow's life in a non-marital deduction trust for the benefit of the widow and the couple's two children. After the widow's death the assets in the non-marital deduction trust would go ultimately to the couple's issue. What we are concerned with here is the valuation, at the time of the husband's death, of the widow's interest in the non-marital deduction trust.

The trust instrument declared that it was the settlor's intent that his widow "be adequately provided for," to which end it was provided that the trustee's powers "shall be liberally construed insofar as allowing the said Trustee to distribute any and all amounts of the income or principal of [the non-marital deduction trust] for [the widow's] benefit so as to allow Settlor's said spouse to continue to maintain herself in the manner to which she has been accustomed throughout their married life...."

The instrument further declared that: "It is the Settlor's express stated intent that the Settlor is creating [the non-marital deduction trust] primarily for the benefit of the Settlor's spouse, and the needs and wishes of the Settlor's children ... shall be deemed secondary to the needs and wishes of the Settlor's spouse. In determining whether or not to make distributions and the amount to be distributed, the Trustee shall consider only the net income payable hereunder with such other income as the spouse may have from all other sources ... but it shall not take into consideration any property owned by the spouse except to the extent of the spouse's need of income or principal to maintain the same. It is the further general intent of Settlor that the principal of the [non-marital deduction trust] herein created not be depleted in favor of Settlor's spouse until the principal from the marital trust is exhausted. Furthermore, the Trustee does have the power to accumulate the income hereunder, but it is the general intent but not absolute direction of Settlor that in the event the spouse of Settlor does not reasonably need the income so produced,

then the income shall be distributed to Settlor's named issue ... so as to avoid an accumulation of income in said [non-marital deduction trust]."

The Trustee was given broad powers to invest, reinvest, manage and administer the assets of the trust, all of which powers, according to the terms of the trust instrument, "shall be exercised in a fiduciary capacity." The trustee was also empowered to make such distributions of income and principal from the non-marital deduction trust to the beneficiaries thereof (the widow and children) "as the Trustee, in the exercise of the Trustee's sole and uncontrolled discretion, may determine." This language is followed immediately by that first quoted above, to the effect that "[i]t is the intent of the Settlor that Settlor's spouse be adequately provided for...."

The record indicates that at the time of the settlor's death his wife, who was not employed outside the home, had no sources of income other than social security, the marital deduction trust, and the non-marital deduction trust.

The government took the position that the value of the widow's interest in the non-marital deduction trust could not be determined because the trustee had the power to invest the assets of that trust in non-productive assets, to invade principal for the benefit of the children, to accumulate any income that might be realized, and to distribute any such income to the children rather than to the widow.

The widow's estate took the position that the husband's intent had been to enable his wife to enjoy her customary standard of living during the remainder of her life. The estate retained Mr. Thomas Custis, a Fellow of the Society of Actuaries, to "make a definitive determination" of the fair market value of the widow's interest in the non-marital deduction trust, assuming that the husband's intent had been as described. A copy of the actuary's report was attached to the complaint with which the widow's estate commenced this lawsuit; on the basis of the valuation set forth in

the report, the estate is seeking an estate tax refund of slightly over $16,000.

The actuary—presumably after making inquiry into the widow's customary standard of living—concluded that "it is highly unlikely that [the widow's] income from the Marital Trust and Social Security would be adequate to meet her needs." He further concluded that "it is appropriate to assume a 90% probability that the income from the Non-marital Trust would be paid to Mrs. Beatrice Weinstein during her lifetime." The actuary thought it unlikely that the principal of the non-marital deduction trust would be invaded, given the provision prohibiting depletion of the principal of that trust before exhaustion of the principal of the marital deduction trust, and he assumed that the non-marital deduction trust (and, presumably, the other trust as well) would earn a return of six percent per annum. Using these and other assumptions that he considered reasonable in light of all the facts available at the time of the husband's death, and taking into account the age of the widow at that time, the actuary stated that in his professional opinion Mrs. Weinstein's interest in the non-marital deduction trust had a fair value, as of the date of the husband's death, of $81,906.33. The government does not deny that the estate would be entitled to a $16,000 refund if the actuary is correct.

The government filed no affidavits or other evidentiary material to refute the factual assumptions reflected in the actuary's report. Instead the government contended that as a matter of law the terms of the trust instrument made the widow's interest in the non-marital deduction trust so amorphous that the interest could not be valued on any rational basis.

The government conceded that the regulations adopted under § 2013 of the Internal Revenue Code provide, under certain circumstances, for the granting of an estate tax credit in respect of "the prior ... transfer of a life estate to the decedent, even though such a life interest is not included in the present decedent's estate and ... therefore, is not subject to federal estate taxes." As the government pointed out, however, the regulations governing the value of such a life interest provide that "the value of the interest is determined as of the date of the transferor's death *on the basis of recognized valuation principles....*" 26 C.F.R. § 20.2013–4(a). (Emphasis supplied.) If the interest is subject to contingencies that make it incapable of valuation in accordance with "recognized valuation principles," the government argued, it is well established that there can be no credit; see, among other authorities, Rev.Rul. 67–53, 1967–1 C.B. 265. Citing *Detroit Bank & Trust Co. v. United States,* 338 F.Supp. 971 (E.D.Mich.1971), aff'd., 72–2 U.S.T.C. ¶ 12,886 (6th Cir.1972), the government noted that "the courts have examined both the trust instrument and applicable state law to determine whether or not there existed a standard which so controls the trustee's discretion that the value of the interest in question is susceptible of valuation as of the transferor's death."

The government's analytical approach is, we believe, correct. If, under the terms of the trust instrument and applicable state law, there is an ascertainable standard by which the trustee's discretion is controlled, and if it is possible, in the light of that standard, to make a reasonable estimate of the value of the transferee-decedent's interest as of the time of the transferor's death, the decedent's estate is entitled to the benefit of the § 2013 credit. If the trustee's discretion is so unrestrained that there is no reasonable way of placing a value on the decedent's interest, the § 2013 credit is not available. Accordingly, we must determine what the trust instrument actually says and what discretion the trustee actually has under the governing state law. The trust instrument was executed in Michigan, and it says that its provisions are to be construed in accordance with the laws of that state, so it is to the law of Michigan that we must turn.

\* \* \*

In Michigan, as elsewhere, "the court's sole objective is to ascertain and give effect to the intent of the testator or settlor." *In re Nowels Estate,* 128 Mich.App. 174, 339

N.W.2d 861, 863 (1983). In determining that intent, the court must look to the trust document and "construe the instrument so that each word contained therein has meaning, if it is possible to do so." *Detroit Bank & Trust Co. v. Grout,* 95 Mich.App. 253, 289 N.W.2d 898, 905 (1980).

These principles are clearly dispositive of the government's argument that the breadth of the trustee's investment powers makes it impossible to determine the value of the widow's interest because of the possibility that the trust assets might be invested in non-income producing property. The powers vested in the trustee are no broader than those customarily granted in trusts of this kind, and the trust instrument expressly provides that all of the trustee's powers "shall be exercised in a fiduciary capacity." In executing the trust, Mr. Weinstein said in so many words that he intended that his wife "be adequately provided for," and he said in so many words that he was creating the non-marital deduction trust "primarily for the benefit of [his] spouse" and only "secondarily" for the benefit of his children and their issue. We must accept as true, at this juncture, the representations that the widow had no extra-trust income other than social security, and that social security alone would not meet her needs. For the trustee to leave the widow in want and to try to further the interests of the children at her expense by investing the trust estate in non-productive assets would be a clear breach of the trustee's fiduciary duty. See *Matter of Estate of Butterfield,* 418 Mich. 241, 341 N.W.2d 453, 459 (1983).

The government makes a somewhat more plausible argument that the widow's interest in the non-marital deduction trust cannot be valued rationally because the trustee is authorized to pay over to "any" beneficiary of that trust, including the children, "such amount of the income and/or principal ... as the Trustee, in the exercise of the Trustee's sole and uncontrolled discretion, may determine." The Michigan Supreme Court has held, however, that notwithstanding an express grant of "uncontrolled discretion" to the trustee in determining how much of the income of a trust shall be paid out, the trustee must still exercise his discretion in accordance with any standards set forth in the trust instrument or reasonably inferable from its terms. *In re Estate of Mendelson,* 391 Mich. 706, 220 N.W.2d 33 (1974). The Michigan Supreme Court squarely held in that case that a provision for the "proper maintenance [of a beneficiary], according to her standard of living" established such a standard. *Id.* 220 N.W.2d at 35.

So it is in the case at bar. The trust instrument that is before us may not be a model to be emulated as far as its draftsmanship is concerned, but taken as a whole it clearly manifests an intent to provide, first and foremost, for the maintenance of the settlor's widow in the manner to which she had been accustomed throughout her married life. Using that standard, it ought to be possible to arrive at a reasonable estimate of the widow's needs. We know that if all of the trust assets were invested at six percent, and if the widow received 100% of the income from the marital deduction trust and 90% of the income from the non-marital deduction trust, her total income from both trusts would be approximately $20,000 per year. The record does not disclose how much additional income she received from social security, and all of these matters can be explored more fully by the trial court on remand, but it is probably unlikely that a closer examination of the facts will disclose any great disproportion between the widow's total income and her actual needs as measured by the standard set forth in the trust.

The situation presented in the case at bar is strikingly similar to that in *Estate of Lloyd v. United States,* 650 F.2d 1196, 228 Ct.Cl. 10 (1981). There, as here, the decedent's estate claimed a § 2013 tax credit in respect of trust property in which the decedent had been given an equitable life interest by her late husband. There, as here, the government contended that the widow's interest could not be valued because the trustee was empowered to pay out of the principal of the trust, to any member of a class that included the widow but was not limited to her, such sums as the trustee "in

its sole and uncontrolled discretion" might deem necessary or advisable. 650 F.2d at 1201. There, as here, the dispositive provisions of the instrument creating the trust showed that the husband's "primary concern was for the welfare of his surviving widow," for whom the husband wished to insure "a standard of living appropriate to her station in life." *Id.* The Court of Claims recognized, as we do, that "[i]t is implicit ... in the statute and the regulations that a life estate or other property for which credit is sought under section 2013 must be rationally capable of valuation at the transferor's death," *id.* at 1199, but the court rejected the government's contention that the power to invade trust principal for the benefit of persons other than the widow rendered her interest in the trust incapable of valuation under the "ascertainable" standard. *Id.* at 1202. We reach the same conclusion here, and we see nothing to the contrary in *Holbrook v. United States*, 575 F.2d 1288 (9th Cir.1978), *Estate of Pollock v. Commissioner*, 77 T.C. 1296 (1981), or the other cases on which the government relies. Because the power to accumulate income and the other powers cited by the government must also be exercised in the light of the primary intent of the settlor to provide for the maintenance of his widow in accordance with her past style of living, the existence of those powers does not alter our conclusion.

The conclusion that the widow's interest in the non-marital deduction trust can be valued "on the basis of recognized valuation principles" finds confirmation, we believe, in Rev.Rul. 70–292, 1970–1 C.B. 187. There it was held that a § 2013 credit was allowable notwithstanding that the trustee was empowered to divert to a third party such trust income as the trustee "deems necessary" for "comfort, support, hospital or medical expenses." The ruling states that the "accustomed manner of living" of the third party, although not expressly referred to in the trust instrument, provided an "ascertainable standard" that would govern the exercise of the trustee's discretion. *Accord,* Rev.Rul 75–550, 1975–2 C.B. 357.

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.