NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-655                                     Appeals Court

DYLAN JONES  vs.  JULIANA JONES.

No. 21-P-655.

Essex.     September 12, 2022. - September 6, 2023.

Present:  Desmond, Sacks, & D'Angelo, JJ.


Divorce and Separation, Division of property, Amendment of
     judgment.  Trust, Irrevocable trust, Beneficiary,
     Distribution, Trustee's discretion, Vested interest.  Gift.
     Value.


     Complaint for divorce filed in the Essex Division of the
Probate and Family Court Department on March 2, 2017.

     The case was heard by Theresa A. Bisenius, J.


     Carolyn Van Tine for the wife.
     W. Sanford Durland, III, for the husband.


     SACKS, J.  Juliana Jones (wife) appeals from an amended

judgment of divorce nisi (divorce judgment), issued by a judge

of the Probate and Family Court after a three-day trial in

September 2019, that, among other things, equally divided the

marital estate between her and Dylan Jones (husband).  The wife

argues that it was error to include in the marital estate for purposes of equitable distribution under G. L. c. 208, § 34, her interests in the following assets that originated in gifts from her mother:  (1) the Juliana Jones Irrevocable Trust (JJIT or trust); (2) certain real property in Michigan; and (3) a particular certificate of deposit issued by UBS Financial Services Inc. (UBS CD).  She argues that her interest in the JJIT is too speculative to constitute marital property, and she contends that all three assets were gifts to her and should not have been treated as marital property.  The wife also argues that the judge, in determining the amount the wife was required to pay to the husband to offset the property she retained as part of the equitable distribution, abused her discretion by not accounting for market fluctuations and tax consequences, as the wife requested in her motion to alter or amend the original judgment of divorce nisi.  We affirm the amended judgment.

Background.  We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  The parties were married in Michigan in August 1998, and the husband filed a complaint for divorce in Massachusetts in March 2017.  The parties had two children together during the marriage (born in 1999 and 2001).  During the marriage, both parties were employed

outside the home, and they contributed equally to raising the children.

The wife's mother made a variety of financial gifts and contributions throughout the years, including, but not limited to, (1) settling a trust for the wife's benefit (the JJIT), (2) gifting substantial funds that were deposited into the UBS CD, and (3) granting the wife a ninety-nine percent interest in a limited liability company (PHR II) that holds title to the marital home and a one-third interest in real property located in Michigan. The wife's mother played a significant role in shaping the marital lifestyle and financial expectations:

> "The [wife's mother] showered the family with gifts, whether monetary or experiential. [She] created a limited liability company which purchased the marital home and paid for its associated real estate taxes and major repairs/renovations. The parties did not have to budget to meet those expenses and instead put those funds towards frequent travel, summer camp and a lifestyle they would not have otherwise been able to afford. The wife always knew that there was additional money available to meet the family's needs and whims, which she used to supplement their lifestyle. But for [the wife's mother's] generosity and this money, the parties would not have been able to maintain the lifestyle they did on their income from employment alone. [The wife's mother] gifted the funds during the marriage and the family enjoyed that lifestyle throughout the marriage. This was not a situation where, as the wife attempted to maintain, the funds were completely segregated and never accessed by the parties."

The parties "contributed to retirement only minimally, likely due to [the] wife's anticipated inheritance and the

significant gifts the parties received during the marriage."[1] Similarly, the judge found that the parties "did not save sufficiently during the marriage" to pay the children's college costs. The judge emphasized that the financial accounts in the wife's name were "utilized throughout [the] marriage . . . [and] were woven into the fabric of the marriage." The judge determined that, "[g]iven the length of the marriage and the parties' equal contribution, it [was] not equitable for these assets to be excluded from the marital estate."

Neither party requested alimony, and the judge found that "in lieu of alimony, an assignment of the marital estate will enable each party to support themselves and their children, while maintaining the marital lifestyle." To that end, the divorce judgment provided, in relevant part, that the wife shall (1) retain, among other things, her interests in the JJIT and PHR II; (2) transfer sixty percent of the UBS CD to the husband; and (3) to effectuate an equal division of assets, pay to the husband, "[a]s property division and not as an award of alimony, . . . the total sum of $1,173,166.89," over a period of ten years, in annual installments, with interest. The judge explained that "[w]ith the husband's share of the property

---

[1] The wife, for example, reported two individual retirement accounts (IRAs) valued at a total of $30,562.26, but "ha[d] not saved toward retirement in any meaningful way otherwise."

division, it [will be] possible for him to maintain the lifestyle of the marriage and reasonable for him to contribute towards college expenses."  The present appeal by the wife followed.

Discussion.  1.  The JJIT.  In 2015, the wife's mother established an irrevocable grantor retained annuity trust (GRAT), a vehicle for transferring money while avoiding Federal gift taxes.  See Freedman v. Freedman, 445 Mass. 1009, 1009 (2005).  Upon the annuity termination date,[2] the GRAT assets remaining after the payment of the annuity were to be divided into equal shares and placed in separate trusts for the wife and her brother.  The judge found that the wife's remainder interest in the GRAT accrued during the marriage and was a "completed gift."  In March 2018 (during the pendency of the divorce proceedings), the wife's separate trust (the JJIT) was funded with 22,905 shares of Bank of Nova Scotia common stock from the GRAT.  The JJIT is governed by Michigan law and managed by an independent trustee.[3]  Funds from the JJIT were used to pay

---

[2] The annuity termination date fell on the second anniversary of the date on which the assets were first transferred to the original trust.

[3] The trust provides that Michigan law "govern[s] [its] validity, construction and all rights and obligations" set forth therein, and that the trustee "shall have all powers conferred by Michigan law, including all powers granted under Michigan Statutes sections 700.7816 through 700.7819."

Federal and Michigan State taxes in June 2019; however, at the time of trial in September 2019, the wife had not received any outright distributions from the trust. The judge found that the value of the JJIT was $1,285,263.27, as of July 2019.[4]

One of the central disputed issues at trial was whether the wife's interest in the JJIT was includable in the marital estate for purposes of equitable distribution under G. L. c. 208, § 34. The judge found that although the JJIT is a "discretionary trust, with a spendthrift provision," "the wife's interest in the JJIT is a fixed and enforceable property right" that is includable in the marital estate because the wife is "entitled to the whole trust property," her "share is not susceptible to reduction, . . . and the primary intent of the trust is" to benefit the wife. The wife contends that this was error, asserting that her interest in the JJIT is a mere expectancy and is thus too remote and speculative for inclusion in the marital estate. We are unpersuaded.

"A party's estate for purposes of equitable distribution under G. L. c. 208, § 34, 'includes all property to which a party holds title, however acquired.'" Levitan v. Rosen, 95 Mass. App. Ct. 248, 253 (2019), quoting Pfannenstiehl v.

---

[4] This figure comprised the market value of the 22,905 Bank of Nova Scotia stock shares ($1,222,668.90) and cash ($62,594.37).

Pfannenstiehl, 475 Mass. 105, 110 (2016).  "Because we are not 'bound by traditional concepts of title or property' in considering whether a particular interest is to be included in the marital estate, we 'have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of [G. L. c. 208,] § 34'" (citation omitted). Pfannenstiehl, supra at 111.  "Whether a trust may be included in the . . . marital estate requires close examination of the particular trust instrument to determine whether the interest is a 'fixed and enforceable' property right, . . . or 'whether the party's interest is too remote or speculative' to be included." Levitan, supra, quoting Pfannenstiehl, supra at 111-112.  "The question turns 'on the attributes' of the specific trust at issue, . . . [requiring] evaluation of the facts and circumstances of each case."  Levitan, supra, quoting Pfannenstiehl, supra at 112.[5]

a.  Attributes of the trust.  Our inquiry thus begins by examining the "attributes" of the JJIT.  Levitan, 95 Mass. App.

_____

[5] "If an interest in a trust is determined after such examination to be speculative or remote rather than fixed and enforceable, and thus more properly characterized as an expectancy, the interest is to be considered under the G. L. c. 208, § 34, criterion of 'opportunity of each [spouse] for future acquisition of capital assets and income.'"  Levitan, 95 Mass. App. Ct. at 253, quoting Pfannenstiehl, 475 Mass. at 112.

Ct. at 253, quoting Pfannenstiehl, 475 Mass. at 112.  Although Massachusetts law governs our ultimate determination whether the wife's trust interest may properly be included in the marital estate under § 34, we look to Michigan law when examining the trust to ascertain the nature of the wife's interest therein. See Levitan, supra at 251, 253.[6]  "When interpreting the meaning of a trust, [we] must ascertain and abide by the intent of the settlor."  In re Miller Osborne Perry Trust, 299 Mich. App. 525, 530 (2013).  "[T]he settlor's intent regarding the purpose of the trust's creation and its operation . . . [is] determined by examining the trust instrument," and we "must attempt to construe the instrument so that each word has meaning."  In re Kostin Estate, 278 Mich. App. 47, 53 (2008).  See Bill & Dena Brown Trust v. Garcia, 312 Mich. App. 684, 694 (2015).

The JJIT contains the following relevant provisions.  The wife, who is the sole beneficiary of the JJIT, is entitled to receive two types of distributions:  (1) discretionary distributions of trust income and principal that the trustee, in his "sole and absolute discretion, considers to be necessary for

_____

[6] Interpretation of the trust, and the determination whether the wife's interest is includable in the marital estate, are questions of law we review de novo.  See Levitan, 95 Mass. App. Ct. at 251-253.  See also In re Theodora Nickels Herbert Trust, 303 Mich. App. 456, 458 (2013); In re Reisman Estate, 266 Mich. App. 522, 526 (2005).

the [wife's] best interests and welfare";[7] and (2) a "[m]andatory [d]istribution" of the entire trust corpus that the trustee "shall pay" after the wife's mother's death (effectively terminating the JJIT).[8]  The JJIT grants the wife a power of appointment, allowing her to appoint the trust corpus to the beneficiaries of her will if she were to die before receiving the mandatory distribution.  In lieu of "outright distribution[s]" to the wife, the trustee is authorized to instead "expend . . . amounts for the [wife's] benefit" to avoid the reach of her creditors and "to give [her] the maximum possible benefit and enjoyment of all of the trust income and principal to which [she] is entitled."

The JJIT also contains two additional provisions designed to avoid the reach of creditors:  (1) a spendthrift provision prohibiting assignment of the wife's interest in the trust

---

[7] Article IV, paragraph A, of the JJIT, entitled "Distribution Standard," provides that "[t]he [t]rustee may pay to [the wife] (or apply for [her] benefit) such amounts of trust net income and principal (including all, part or none) . . . as the [t]rustee, in the [t]rustee's sole and absolute discretion, considers to be necessary for the [wife's] best interests and welfare. . . .  In making distribution decisions, the [t]rustee may, but shall not be required to, consider [the wife's] other financial resources."

[8] Article IV, paragraph B, of the JJIT, entitled "Mandatory Distribution," provides that "[u]pon the death of [the wife's mother], the [t]rustee shall pay to [the wife] . . . the entire balance of the trust assets upon the written request of [the wife]."

(except in connection with the exercise of her power of appointment);[9] and (2) a "Postponement of Distributions" provision (postponement provision).  The latter provides, in relevant part:

> "Notwithstanding any other provision of the trust, the [t]rustee shall have the power to postpone any principal or income distribution otherwise required to be made from the trust . . . upon or after the . . . death of a third person (and to postpone to that extent the termination of such trust which might otherwise be required) if the [t]rustee, in the [t]rustee's sole and absolute discretion, determines that there is a compelling reason to postpone such distribution, such as a beneficiary's serious disability, drug or alcohol abuse, a beneficiary's failure to enter into an appropriate prenuptial agreement, the possibility of divorce, failure to pursue a college education or vocation commensurate with the ability of such beneficiary, potential or pending creditor claims (possibly relating to such distribution), a serious tax disadvantage to such beneficiary (or his or her family) if such distribution were made, or similar substantial cause.  Any such postponement of distribution may be continued by such [t]rustee, in whole or in part, from time to time, up to and including the entire lifetime of the beneficiary. While such postponement continues, all of the other provisions previously applicable to such trust shall continue in effect, except that such beneficiary shall only receive distributions from time to time of such amounts from such principal and the net income therefrom as the [t]rustee, in the [t]rustee's sole and absolute discretion,

_____

[9] The JJIT's spendthrift provision provides that "[t]o the extent permitted by law, no beneficiary's interest shall be subject to liabilities or creditor claims or to assignment or anticipation.  However, this paragraph shall not prevent the exercise of any power of appointment granted in this [trust]." See Mich. Comp. Laws § 700.7103(j) ("'Spendthrift provision' means a term of a trust that restrains either the voluntary or involuntary transfer of a trust beneficiary's interest").  See also Mich. Comp. Laws § 700.7502.

deems necessary or appropriate for the best interests of
such beneficiary."  (Emphases added.)

The wife claims error in the judge's determination that she
"will ultimately receive the whole of the trust property,"
contending that the judge disregarded the broad discretion
afforded to the trustee.  It is true that the JJIT contains a
"discretionary trust provision," Mich. Comp. Laws
§ 700.7103(d),[10] granting the trustee "sole and absolute
discretion" to make distributions of income and principal
"necessary for the [wife's] best interests and welfare," and
that, under Michigan law, a beneficiary "has no right to any
amount of trust income or principal that may be distributed only
in the exercise of the trustee's discretion."  Mich. Comp. Laws
§ 700.7815(1).  See In re Johannes Trust, 191 Mich. App. 514,
517 (1991).  See also Levitan, 95 Mass. App. Ct. at 253, 254
("[i]nterests in discretionary trusts generally are treated as
. . . too remote for inclusion in a marital estate . . . because
. . . the beneficiary must rely on the trustee's exercise of

---

[10] "'Discretionary trust provision' means a provision in a
trust, regardless of whether the terms of the trust provide a
standard for the exercise of the trustee's discretion and
regardless of whether the trust contains a spendthrift
provision, that provides that the trustee has discretion . . .
to determine [one] or more of the following:  (i) [w]hether to
distribute to or for the benefit of an individual . . . the
income or principal or both of the trust"; "(ii) [t]he amount,
if any, of the income or principal or both of the trust to
distribute to or for the benefit of an individual."  Mich. Comp.
Laws § 700.7103(d).

discretion . . . and cannot compel distributions" [citation omitted]).  Nevertheless, even if "a trustee's discretion is 'uncontrolled,'" that fact "does not necessarily preclude a trust's inclusion in the marital estate."  Id. at 254.  Here, moreover, while the trust clearly contains discretionary components, the wife largely ignores the mandatory distribution language and the limits on the trustee's discretion to postpone such a distribution.  We turn to the issue of the trustee's discretion regarding the mandatory distribution.

b.  Mandatory distribution.  The JJIT is not a pure discretionary trust, see Coverston v. Kellogg, 136 Mich. App. 504, 508-510 (1984), because it also provides for a "mandatory distribution" of the entire trust corpus that the trustee "shall pay" to the wife upon her mother's death, see Black's Law Dictionary 1151 (11th ed. 2019) (defining "mandatory" as "[o]f, relating to, or constituting a command; required, preemptory"); Black's Law Dictionary 1653 (defining "shall" as "[h]as a duty to; more broadly, is required to").  See also In re Kostin Estate, 278 Mich. App. at 54 (where trust does not define essential term, "we look to a dictionary definition").[11]

---

[11] The Michigan trust code does not provide a general definition for "mandatory distribution."  See Mich. Comp. Laws § 700.7103.

Notwithstanding this mandatory distribution clause, the wife asserts that "the trustee's discretion includes the power to defeat the [w]ife's interest in the trust by not making any distributions to her." We conclude otherwise. While the trustee does have the "power to postpone" the wife's enjoyment and possession of the mandatory distribution (pursuant to the postponement provision),[12] the trustee does not have the power to divest the wife of her interest in the trust corpus. Compare Black's Law Dictionary 1413 (defining "postpone" as "[t]o put off to a later time"), with Black's Law Dictionary 601 (defining "divestment" as "[t]he complete or partial loss of an interest in an asset"). Even if the trustee is permitted to postpone the mandatory distribution indefinitely for the wife's "entire lifetime," his power is limited to determining the timing of the mandatory distribution -- but not the wife's ultimate entitlement to it. See Coverston, 136 Mich. App. at 509-510. The wife retains the power to appoint the trust corpus to the beneficiaries of her estate, even if she dies before the

---

[12] By its terms, the postponement provision applies, notwithstanding any other trust provision, to all "distribution[s] otherwise required" (including any distributions upon the death of a third person or that would terminate the trust). Although the term "mandatory distribution" is not specifically used in the postponement provision, we think it reasonable to infer that the preceding language regarding an "otherwise required" distribution encompasses the mandatory distribution.

mandatory distribution is made.  See id. at 510.[13]  The wife's

interest in the trust corpus is therefore vested and "fixed."

Levitan, 95 Mass. App. Ct. at 253.

    c.  Enforceability.  Moreover, the wife's right to receive

the mandatory distribution is "enforceable."  Levitan, 95 Mass.

App. Ct. at 253.  The trustee may postpone the mandatory

distribution only for a "compelling reason."  The postponement

provision lists several circumstances that could qualify as a

"compelling reason":

> "[the wife's] serious disability, drug or alcohol abuse,
> [the wife's] failure to enter into an appropriate
> prenuptial agreement, the possibility of divorce,[14] [the
> wife's] failure to pursue a college education or vocation
> commensurate with [her] ability . . . , potential or
> pending creditor claims (possibly relating to such
> distribution), a serious tax disadvantage to [the wife] (or

---

[13] Under Michigan law, trust property subject to a
testamentary general power of appointment is treated as a
property interest reachable by the beneficiary's creditors upon
the beneficiary's death.  See Mich. Comp. Laws § 556.123(3) ("If
a donee has at the time of his or her death a general power of
appointment, whether or not he or she exercises the power, the
personal representative or other legal representative of the
donee may reach on behalf of creditors any interest that the
donee could have appointed to the extent that the claim of a
creditor has been filed and allowed in the donee's estate but
not paid because the assets of the estate are insufficient").

[14] There has not been any postponement here on these or any
other grounds.  Nor was there any evidence that the wife ever
requested, or would need to request, a distribution in order to
make any of the payments to the husband required by the amended
judgment of divorce.  To the extent the "possibility of divorce"
provision was intended to preclude the husband from obtaining
any of the trust assets themselves, or assets directly traceable
thereto, the amended judgment of divorce has not been shown to
contravene that intent.

. . . her family) if such distribution were made, or similar substantial cause."

In short, the trustee may postpone the mandatory distribution to the wife only if he determines that one of the listed compelling reasons (or a "similar substantial cause") exists.  While this determination is left to the trustee's "sole and absolute discretion," the discretion is nevertheless narrower than that afforded to the trustee when making regular distributions.[15]  See Restatement (Third) of Trusts § 87 comment a (2007) ("a power is discretionary except to the extent its exercise is directed by the terms of the trust or compelled by the trustee's fiduciary duties").

Where the trustee's exercise of discretion is governed by a specific standard (sometimes expressed as an "ascertainable standard"[16]), the standard is judicially enforceable and the trustee must adhere to it.  See In re Mendelson Estate, 391 Mich. 706, 711 (1974).  See also Mich. Comp. Laws § 700.7801

---

[15] We note that the circumstances qualifying as a "compelling reason" set forth in the postponement provision may be temporary in nature or within the wife's control, further limiting the scope of the trustee's power to postpone.

[16] The Michigan trust code defines "[a]scertainable standard" as "a standard relating to an individual's health, education, support, or maintenance within the meaning of [§] 2041(b)(1)(A) or 2514(c)(1) of the [I]nternal [R]evenue [C]ode of 1986, 26 [U.S.C. §§] 2041 and 2514."  Mich. Comp. Laws § 700.7103(b).  See also G. L. c. 203E, § 103 (defining "[a]scertainable standard").

("the trustee shall administer the trust . . . in accordance with its terms"); Mich. Comp. Laws § 700.7815(1)(c) (trustee's failure to exercise judgment "in accordance with the terms and purposes of the trust" is abuse of discretion);[17] Estate of Weinstein v. United States, 820 F.2d 201, 205 (6th Cir. 1987) (under Michigan law, "trustee must . . . exercise his discretion in accordance with any standards set forth in the trust instrument or reasonably inferable from its terms").  And the presence of terms such as "uncontrolled discretion" or "sole discretion" is not inconsistent with the establishment of an enforceable interest.  In re Mendelson Estate, supra.  See Estate of Weinstein, supra (same).[18]  Here, the requirement that

---

[17] Michigan also provides statutory remedies for a trustee's breach of trust.  See Mich. Comp. Laws § 700.7901.

[18] Despite the discretion conferred on the trustee, we conclude that the JJIT sets forth a judicially enforceable standard with specific parameters guiding the trustee's exercise of discretion.  See A. Newman, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 560 (3d ed. 2010); Restatement (Third) of Trusts § 87 comment d (2007).  We note for comparison that in Massachusetts, "even very broad discretionary powers are to be exercised . . . with reasonable regard for usual fiduciary principles," and "[a] fair reading of the whole of most trust instruments will reveal a 'judicially enforceable . . . standard' for the exercise of even broadly expressed fiduciary powers" (citations omitted).  Briggs v. Crowley, 352 Mass. 194, 200-201 (1967)  The difference between language conferring "extended discretion" (e.g., "sole and absolute" or "absolute and uncontrolled" discretion) and language conferring "simple discretion" is "one of degree more than of kind" (quotation omitted).  Morse v. Kraft, 466 Mass. 92, 98 n.9 (2013).

a trustee make a mandatory distribution unless there is a "compelling reason" not to do so provides a standard to guide the trustee, one that courts will enforce, and thus the wife has an enforceable interest.[19]  Cf. Matter of the Estate of Kettle, 73 A.D.2d 786, 786 (N.Y. 1979) (under New York law, where trust provided that stock should not be sold in absence of "compelling reason," and trustee sold stock without showing compelling reason, beneficiary successfully brought action against trustee to restore stock to trust).

In summary, the wife is the sole beneficiary (in a closed beneficiary class) of an irrevocable trust; her interest in the trust is not susceptible to reduction or divestment; she is eligible to receive discretionary distributions of income and

---

[19] In an unpublished decision involving a postponement provision remarkably similar to the postponement provision in the JJIT, the Court of Appeals of Michigan held that the trustee's "power to postpone" could not be invoked in the absence of a "compelling reason," and there were "only limited circumstances . . . that would amount to a 'compelling reason' or 'substantial cause' by which the trustee could postpone, but not deny," a distribution.  In re Ernest W. Hamady Trust, Nos. 319900, 319901, slip op. at 5-6 (Mich. Ct. App. July 30, 2015) (Hamady).  In Michigan, "an unpublished opinion has no precedential value," but it may be followed if a court "finds the reasoning persuasive."  Zaremba Equip., Inc. v. Harco Nat'l Ins. Co., 280 Mich. App. 16, 42 n.10 (2008).  Although we recognize that Hamady is not binding on the Michigan courts or on us, its reasoning is persuasive and, in the absence of published Michigan case law on the specific issue before us, it is the best indication we have of Michigan law on that issue. Cf. Mich. Ct. R. 7.215(C)(1) (2023) (permitting citation of unpublished decisions if party explains reason for citing and relevance of decision).

principal that the trustee deems in her "best interests and welfare," and she may also have payments made on her behalf by the trustee (in lieu of outright distributions); her right to receive a mandatory distribution of the entire trust corpus upon her mother's death is vested and fixed; and she has the power to appoint trust assets to the beneficiaries of her estate if she dies before receiving the mandatory distribution. To the extent that the trustee has the discretion to "postpone" distributions for a "compelling reason," that discretion is subject to judicially enforceable limits.

Upon examining the trust instrument as a whole, see Bill & Dena Brown Trust, 312 Mich. App. at 694, it is apparent that the settlor's intent, and the overriding purpose of the trust, is to benefit the wife rather than "subsequent generations," Levitan, 95 Mass. App. Ct. at 254, and to ensure that she receives "the maximum possible benefit and enjoyment of all of the trust income and principal to which [she] is entitled" by shielding trust assets from creditors.[20] The wife contends that including

---

[20] In addition to the spendthrift provision, the postponement provision is clearly designed to shield trust assets from creditor claims. Michigan law permits creditors to reach an undistributed mandatory distribution after the distribution date unless it is subject to the trustee's exercise of discretion. See Mich. Comp. Laws § 700.7507 (allowing creditors to reach undistributed mandatory distributions after distribution date, unless distribution is subject to exercise of trustee's discretion -- even if "[t]he direction is expressed in the form of a standard of distribution," or "[t]he terms of the

the trust in the marital estate disregards the settlor's intent for the trust to solely benefit her, because its inclusion indirectly benefits the husband in contravention of the settlor's intent.  However, the fact that the trust is primarily intended to benefit the wife undermines her argument that her interest in the trust is too speculative to constitute a property interest for purposes of § 34.  See Levitan, 95 Mass. App. Ct. at 254-255 (settlor's primary intent for trust to benefit beneficiary spouse, rather than subsequent generations, weighed in favor of treating spouse's trust interest as property subject to equitable distribution under § 34).  Moreover, the settlor's intent to benefit the wife does not prevent the JJIT's inclusion in the marital estate so long as the wife, rather than the husband, retains the trust interest (to avoid running afoul of the spendthrift provision).  See id. at 255.

   d.  Trust case law.  The wife's interest in the JJIT shares attributes with other trust interests that our courts have deemed sufficiently fixed and enforceable for inclusion in the marital estate.  See, e.g., Levitan, 95 Mass. App. Ct. at 254-255 (wife's trust interest includable in marital estate because she was sole beneficiary, beneficiary class was closed, her share was "not susceptible to reduction," "the 'primary intent'

---

trust authorizing a distribution use language of discretion and language of direction").

of the trust [was] to provide for the wife rather than for subsequent generations," and although "trustee's discretion [was] not guided by an ascertainable standard, there [was] some degree of predictability built into the trust by virtue of the wife's annual right to withdraw five percent of the trust principal, albeit subject to the spendthrift provision" [citation omitted]); Comins v. Comins, 33 Mass. App. Ct. 28, 30-31 & n.4 (1992) (wife's interest in discretionary trust with ascertainable standard deemed sufficiently certain to include in marital estate where she was sole beneficiary and had power to appoint recipients of trust corpus upon her death).[21]

By contrast, the trust interests that our courts have deemed too remote or speculative for inclusion in the marital estate are readily distinguishable from the trust interest at issue here.  See, e.g., Pfannenstiehl, 475 Mass. at 114

---

[21] See also Lauricella v. Lauricella, 409 Mass. 211, 216-217 (1991) (husband's vested, one-half beneficial interest in trust was includable under § 34 as husband occupied two-family house owned by trust, beneficiary class was closed, and husband was likely to outlive trust's natural termination date and receive share of trust property); S.L. v. R.L., 55 Mass. App. Ct. 880, 883-884 & n.10 (2002) (wife's one-fifth remainder interests in four trusts were includable in marital estate as wife's interest was fixed at minimum of one-fifth and could increase if certain events occurred); Davidson v. Davidson, 19 Mass. App. Ct. 364, 371-372 (1985) (husband's remainder interest in father's testamentary trust, which granted trustees "uncontrolled discretion" and contained spendthrift provision, was part of marital estate because husband's remainder interest was fixed at time of divorce, even though value was uncertain).

(beneficiary husband's "right to distributions . . . [was] speculative, because the terms of the trust permit[ted] unequal distributions among an open class that already include[d] numerous beneficiaries, and because his right 'to receive anything [was] subject to the condition precedent of the trustee having first exercised his discretion' in determining the needs of an unknown number of beneficiaries" [citation omitted]); D.L. v. G.L., 61 Mass. App. Ct. 488, 498-500 (2004) (husband's contingent remainder interest in trust too remote or speculative for inclusion in marital estate because he would receive his share only if he were still alive on April 10, 2011, and his father had died before that particular date).

We therefore conclude that the wife's interest in the JJIT is sufficiently "fixed and enforceable" to constitute a property interest (rather than "too remote or speculative"). Levitan, 95 Mass. App. Ct. at 253, quoting Pfannenstiehl, 475 Mass. at 111-112. Accordingly, the judge permissibly included the JJIT in wife's estate, and assigned it to her, for purposes of equitable distribution under G. L. c. 208, § 34. See Levitan, supra at 255.

2. Michigan real property. The wife argues that the judge should have applied Michigan law in determining whether the wife's $72,633 indirect interest in certain Michigan real

property[22] was includable in the marital estate.  Under Michigan
law, according to the wife, the property was separate from the
marital estate and not subject to distribution.  The argument
misses the mark.

As we have previously stated, the Massachusetts equitable
distribution statute, G. L. c. 208, § 34 -- not Michigan law --
governs the property division in this case.  Section 34 permits
a judge to assign property owned by either spouse "whenever and
however acquired," Rice v. Rice, 372 Mass. 398, 400 (1977),
including real property located outside Massachusetts, see id.
at 399, 402 (affirming award of husband's interest in Canadian
real property to wife); Rolde v. Rolde, 12 Mass. App. Ct. 398,
399 (1981) (affirming property division that included order
requiring wife to convey interest in Maine real property to
husband).  See also 2A C.P. Kindregan, Jr., M. McBrien, & P.A.
Kindregan, Family Law and Practice § 56:4 (4th ed. 2013) ("the
power of the court to hold the person in contempt if he or she
fails to comply with the order is the ultimate basis of the

---

[22] At the time of trial, the wife held a ninety-nine percent
interest (apparently transferred to her by her mother) in a
Michigan limited liability company, PHR II LLC, which in turn
held a one-third interest in another Michigan entity, RJP3
Investment Company, LLC, which in turn held a $220,100 equity
interest in an office building and surrounding land in Troy,
Michigan.  The judge found that the value of the wife's interest
in PHR II was $72,633.

court's jurisdiction to order an assignment of out-of-state property").  Thus, the wife's indirect interest in the Michigan real property was properly included in the marital estate for the purposes of equitable division.[23]

3.  Source of assets.  The wife argues that the judge erred by including three particular assets in the marital estate, where those assets originated with the wife's mother, were kept separate from other marital assets, and assertedly were not relied upon by the parties in maintaining their lifestyle during the marriage.  The three assets at issue are the wife's interest in the JJIT, the Michigan real property, and the UBS CD.[24]  But the wife points to no reason why these assets could not be so included.  See Levitan, 95 Mass. App. Ct. at 253 (party's estate for purposes of equitable distribution includes all property to which party holds title, however acquired).  Indeed, the judge's inclusion of the three assets in the estate, for potential division, appears unassailable.  See Williams v. Massa, 431 Mass. 619, 625 (2000) ("no question that [assets gifted to or

---

[23] The judge did not order the interest itself divided or transferred to the husband.  The wife retains "all right, title and interest" in the two intermediary entities through which she holds her indirect interest in the property.

[24] The UBS CD was funded with a total of $300,000 in gifts from the wife's mother to the wife, which the parties had neither added to nor withdrawn from during the marriage.  At the time of trial, the account was valued at $310,683.54.

inherited by husband from his parents] comprised part of the marital estate for purposes of possible division under G. L. c. 208, [§] 34").

The wife asserts that Williams supports her position. In Williams, however, the judge considered the source of certain assets not for the purpose of determining what to include in the marital estate, but only to determine how to equitably divide that estate. Id. at 626. The wife's reliance on Williams is misplaced.

The wife also suggests that the judge should have treated the three assets as "kept outside the marital partnership by tacit agreement of the parties." Bak v. Bak, 24 Mass. App. Ct. 608, 621 (1987). The judge found, however, that the availability of gifts from the wife's mother, both present and anticipated, allowed the parties to enjoy an otherwise unaffordable lifestyle and to forgo saving for anticipated future expenditures such as retirement. Even if the parties did not actually have occasion during the marriage to draw upon the three specific assets the equitable division of which the wife now challenges, the judge could reasonably conclude that their existence was "woven into the fabric of the marriage" and enabled a higher current standard of living for both parties.[25]

---

[25] Bak is distinguishable for a second reason. There, a judge left the husband in possession of certain real estate,

4.  Market fluctuations.  The wife argues that the judge abused her discretion by equitably dividing several of the wife's assets without taking into account how market fluctuations in stock prices could affect the value of those assets.[26]  The wife suggests that the judge should have divided those assets by percentage, rather than by using values computed as of a date several months before trial, but which rose by the time of trial and then fell sharply after the entry of judgment nisi.  See generally Gazelle vs. Gazelle, 102 Mass. App. Ct. 764, 766-767, 769 (2023) (determination of appropriate valuation date for marital property left to judge's sound discretion; no error in valuing property as of date of appraisals conducted

--------

which had long been used by his family, in part so that the property could serve "as security for the payments of alimony" the husband was ordered to make to the wife.  Bak, 24 Mass. App. Ct. at 621.  Here, in contrast, neither party requested nor did the judge order alimony.  Rather, the judge ordered a property division "in lieu of alimony" that would allow the husband, as well as the wife, to continue to enjoy the standard of living each enjoyed during the marriage.  Under § 34, "the court may assign to one party in a divorce proceeding all or part of the separate nonmarital property of the other in addition to or in lieu of alimony."  Rice, 372 Mass. at 401.  The Alimony Reform Act of 2011 amended § 34 to expressly direct the court to consider, in addition to other factors, "the amount and duration of alimony, if any, awarded under sections 48 to 55, inclusive."  G. L. c. 208, § 34, as amended by St. 2011, c. 124, § 2.

[26] The assets at issue are the JJIT, which consists largely of shares of stock in the Bank of Nova Scotia; and PHR II, which the wife's brief asserts is heavily invested in stock in the same bank.

before trial, notwithstanding fluctuations in value during trial and at time of divorce judgment).

The short answer to this argument is that the wife has not included in the record appendix the proposed judgment using percentage values that she says was submitted to the judge.  Her brief cites only to her motion to alter or amend the judgment under Mass. R. Dom. Rel. P. 59(e), and although that motion refers to a previously submitted proposed judgment containing percentages, we do not have the proposed judgment itself.  It is "a fundamental and long-standing rule of appellate civil practice" that the appellant, here the wife, has an obligation "to include in the appendix those parts of the [record that] are essential for review of the issues raised on appeal."  Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807 (1992).  On the inadequate record the wife has supplied, we cannot say that the judge abused her discretion in declining to follow whatever approach the wife proposed.[27]

---

[27] We add that the wife has not established that the amended judgment nisi requires the sale at any particular time of any of the wife's assets that are subject to fluctuations in market value.  Moreover, from all that appears, such fluctuations may inure to the wife's benefit.  At the time any sales are required, it may turn out that fewer shares must be liquidated in order to make the required payment to the husband than if the judgment had awarded him a percentage, rather than a fixed amount, of the value of the assets in question.  Finally, the wife misplaces reliance on Baccanti v. Morton, 434 Mass. 787

5. <u>Tax consequences</u>. Finally, the wife argues that the judge abused her discretion by not considering the adverse tax consequences to the wife of the order to pay the husband $1,173,166.89 over a ten-year period. The wife's motion to alter or amend the judgment requested, among other things, that the judge minimize the tax consequences of the asset sales the wife would have to undertake in order to make the payments to the husband. The judge allowed the motion in some respects but made no amendments to address tax issues.

In dividing marital assets, "where the issue of tax consequences has been raised and the judge has been provided with appropriate evidence in the record, . . . the judge should consider the tax consequences arising from a judgment" (citation and quotation omitted). <u>L.J.S</u>. v. <u>J.E.S</u>., 464 Mass. 346, 350 (2013). "In some circumstances, tax consequence issues may be raised during trial; in others, the issues may be more appropriately raised in a postjudgment motion to amend the judgment under Mass. R. Dom. Rel. P. 59 (e) . . . ." <u>Id</u>. at 350-351. But "[i]f parties do not request the judge to consider particular tax consequences and do not introduce reasonably

_____

(2001). That case involved how to divide assets, such as unvested stock options, where their "present valuation is uncertain or impractical." <u>Id</u>. at 802. There was nothing uncertain about the present value of the bank stock at issue here. The wife's brief furnishes exact share values as of dates prior to trial, at trial, and after the entry of judgment.

instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues." Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 866 (1989).

Here, the wife's postjudgment motion offered no evidentiary support for her claim that she would be obligated to liquidate assets, and pay corresponding taxes, in order to make the payments to the husband. Her motion did assert that she had already paid all of the taxes due on her assets for the year in which the case was tried (2019), and she asked that her required payment to the husband be reduced by one-half of the amount of those tax payments. But she failed to assert (let alone offer evidence of) what specific amounts she had actually paid in taxes, giving the judge insufficient information with which to amend the judgment.

As for future taxes, she requested in general terms that she "be permitted to transfer assets valued at the yearly payout amounts to [the husband] and he should then be responsible for the taxes associated with any transfer or liquidation." But she failed to specify what taxes she anticipated would need to be paid. This deprived the husband of the information necessary to evaluate the consequences to him of her proposal, and it deprived the judge of the information necessary to determine whether her proposal was equitable. The wife's motion stated that a proposed order was submitted therewith, but she has not

included any such proposed order in the record appendix.  See
Shawmut Community Bank, N.A., 30 Mass. App. Ct. at 372-373.  In
these circumstances, the wife has not shown that the judge
abused her discretion in denying the motion to alter or amend
the judgment to take account of tax consequences.

Amended judgment of divorce<br>nisi affirmed.